No. 14,118.

CAPRA *v.* LOCAL LODGE No. 273, OF THE BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN ET AL.
(76 P. [2d] 738)

Decided February 21, 1938.

Mr. F. E. DICKERSON, Mr. C. D. BROMLEY, Mr. T. J. MORRISSEY, for plaintiff in error.

Messrs. HINDRY, FRIEDMAN & BREWSTER, Mr. T. R. WOODROW, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

BY this suit of equitable nature, plaintiff in error Capra, plaintiff below, seeks by mandatory injunction to fix and enforce what he claims to be certain seniority rights of himself and fellow members of the Denver or Local Lodge No. 273 of the Brotherhood of Locomotive Firemen and Enginemen, over and upon a line of the Denver and Rio Grande Western Railroad Company operating between Denver and Bond, Colorado. The trial court entered a judgment of dismissal.

Capra is a locomotive fireman in the service of the railroad company involved, and as such, has no inherent right to seniority in service, and can have only such rights as may be based on a contract relative thereto. Such contracts may be, and are, made by and between authorized representatives of the voluntary association or brotherhood, of which he is a member, and the railroad company. On becoming a member, Capra

agreed to be governed by the constitution and bylaws of the brotherhood, which authorize committees of its membership to negotiate for and establish rights in service, and tribunals to determine questions affecting such rights as may arise. Unless a contract right has been invaded or the actions of the internal tribunals to which he must first resort, have been arbitrary or fraudulent, courts will not interfere.

We might say at the outset, that the interpretation, and determination of Capra's status made by the tribunals of the brotherhood, to which he unsuccessfully submitted his claim, are most persuasive, if not binding, especially in view of a finding of the trial court on sufficient competent evidence that such were not arbitrary or fraudulent. However, we choose to discuss, and rest our decision on, the more obviously certain fact that there is here no invasion of a contractual seniority right, because there is no existing contract covering the specific seniority which plaintiff here wishes to assert for himself and others similarly situated. He has no right by seniority of service, other than such as was established by a contract made for his benefit at a time when the part of the railroad system to which he desires that contract extended, was not in existence. Application of the terms and provisions of that contract would be proper only if it be determined that the new or additional part of the railroad is a branch within the territorial division of the railroad system, as made by the contract for seniority of service purposes, and then, only by supplemental contract, or interpretation of the existing contract, specifically made for operation purposes by the parties thereto. Capra's contention that such new part of the system is a branch is opposed by defendants, who are other locals of the brotherhood, and the railroad company, all insisting that the facts conclusively show it to be a new main line of the system.

The record detailing all material facts herein is voluminous, but a very brief statement of the substance

thereof will serve our purpose. The Denver and Rio Grande Western Railroad Company is a Delaware corporation operating a transcontinental railway system consisting of several main lines and branches. Its principal main line, in 1925, extended from Denver, Colorado, through Colorado to Salt Lake City and Ogden, Utah. The part of the main line here involved, extended south from Denver 119 miles to Pueblo, west, first to Salida, 95 miles, then to Minturn, 86 miles, and from Minturn 147 miles to Grand Junction, Colorado. The Brotherhood of Locomotive Firemen and Enginemen is a voluntary organization of labor union men employed as firemen and enginemen on railroads of the United States and Canada, and has constituent lodges located at different points on the railroads. Five of the nine of these local lodges are located on the line of railroad above mentioned, namely, Local Lodge No. 273 at Denver, No. 59 at Pueblo, No. 140 at Salida, No. 323 at Minturn and No. 594 at Grand Junction. The Brotherhood has a written constitution which provides for the government of the order and its local lodges, and provides tribunals to settle disputes, between members and between local lodges, arising from working conditions. It also enters into collective bargaining, and makes contracts with railroad companies relative to rules and standards of wages and working conditions, which govern the individual members in respect to their work on the railroads. Each local lodge elects a member to what is known as the ''General Grievance Committee'' which committee has jurisdiction on a particular line of the railroad. Such a committee from the local lodges above named, by its authorized chairman, entered into a contract with the railroad company here involved April 1, 1925, article 69 of which fixed seniority districts as follows:

''All main lines and connecting branch lines designated as The Denver and Rio Grande Western Railroad System shall be divided into permanent seniority dis-

tricts, on which engineers and firemen shall hold seniority rights as follows:

"First District—Pueblo Division:

"Subdivision 1: Denver to Pueblo, branches and Denver Yards.

"Subdivision 2: Pueblo to Salida, and branches.

\* \* \*

"Salida Division:

"Subdivision 3: Salida to Minturn, including branches and Salida Yard.

\* \* \*

"Second District—Grand Junction and Salt Lake Divisions:

"Subdivision 4: Minturn to Grand Junction, including Minturn and Grand Junction Yards, and branches."

It is to be here noted that certain territory of the railroad system was definitely allocated in the contract. The terms and conditions of this contract appear to have been satisfactory to all concerned as it related to the line above described, and then existing. It remained so until 1927, when the Moffat Tunnel was completed. This tunnel permits the passage of railway trains under and through the Continental Divide, and is westerly from Denver. The railroad company by leasing certain parts of lines of other companies leading to and through the tunnel, and by construction of 38 miles of new road, connected with its line above described between Minturn and Grand Junction, thereby establishing a new line between Denver and Grand Junction, shorter than the old one by a distance of 176 miles. On the leased parts, the company could not pick up or discharge passengers or freight. This new line lessened traffic on the old, reducing the working conditions of the firemen, and affected particularly the members of the locals at Pueblo, Salida and Minturn. All the locals affected presented to the chairman of the general grievance committee the question as to what local would have the right to man the trains over the new route.

Members of Denver Lodge No. 273 contended, as Capra now contends for them and himself, that they were entitled to exclusive seniority rights on this new line from Denver to its terminus at Bond. The general grievance committee met January 3, 1934, heard the matter of the respective claims of the five local lodges affected, and by its decision on May 15, 1934, held that members of Denver Lodge No. 273, were not entitled to *exclusive* rights over the new route and allocated the work or runs by percentage on a pro rata mileage basis between Lodges No. 273, 59, 140 and 323. On this basis eleven firemen's jobs were affected, and four of these were allocated to Denver No. 273, four to Pueblo No. 59 and three to Salida No. 140.

It is clear that in and by this adjustment, made according to the policy of the brotherhood, seniority rights were not established or granted over the new line or territory, neither were the seniority districts in any way changed or affected, but there merely was a division of the work on a percentage basis. This of course is subject to change by the parties to the contract.

Under pertinent provisions of the brotherhood constitution, Denver Lodge No. 273 appealed to the international president, who approved the decision of the general grievance committee, but made a slight change in the percentage basis. From this decision, the lodge appealed to the board of directors of the brotherhood sitting at Cleveland, Ohio. All contentions were there presented and the board decided that the Denver members were not entitled to all the jobs on the new route, and affirmed the percentages fixed originally by the general grievance committee. To enjoin the carrying out of these decisions, Capra, for himself and on behalf of Denver Lodge No. 273, filed this action.

Capra, as well as all other members of the brotherhood, by consent, conferred upon certain committees, officials and tribunals, the power of internal management of the lodges and the rights and working conditions of the mem-

bers. The presumption is that correct and fair action was taken by the supervising authorities and tribunals, and in the absence of fraud or caprice, courts can not interfere. As to whether the new route, not in existence at the time the 1925 contract was executed and when seniority rights were fixed on what then was the working territory, is a "branch" or "main line," is a question of fact. This question was determined by the trial judge, now deceased, in an opinion prepared with the usual meticulous care for which he was noted. Considering the facts appearing in the record, we cannot see how he could come to any other conclusion than that reached by him in holding that it is not a "branch" of the old line, but constitutes a "main line." This finding we will not disturb, and with no reluctancy, affirm the judgment based thereon.