[Civ. No. 11882.   First Dist., Div. One.   Mar. 3, 1942.]

P. B. AUSTIN, Appellant, v. SOUTHERN PACIFIC COM-
PANY (a Corporation), et al., Respondents.

H. L. Richardson for Appellant.

John J. Allen, Jr., Henley C. Booth, Burton Mason, Vaughns & Larche and Frank M. Larche for Respondents.

GOODELL, J. pro tem.—This appeal was taken from a judgment for respondents after the demurrer of each of them to the third amended complaint had been sustained without leave to amend.

It appears from said complaint that appellant was employed by respondent railroad in January, 1911, as a chef and had worked continuously as a cook for the same employer ever since; that in June, 1933, he was reduced in rank from chef to second cook and was never restored to his former rating; that his seniority entitled him to chef's rating, and that others, junior in service, had been advanced over him and given that rating; that in 1933 he had been "held out of service" for two months, at which time he was entitled to a salary of $147.50, but as second cook had received only $110 a month, and that he had run as second cook from September, 1933, until July, 1938, when he was "displaced from his employment . . . because of lack of seniority." (This last allegation is hard to reconcile with the allegation of continuous service.) Further, that there are now working for the respondent railroad numerous chefs whose seniority status is not as high as his, in preference to whom he should now be employed, and that his position with respondent railroad "is at a hazard."

The complaint alleges on information and belief that prior to this action, the exact date of which plaintiff does not know, respondent railroad "secretly, deliberately, and without notifying plaintiff, entered into a written contract" with re-

spondent union "defining the seniority status of its dining car employees" whereby "the seniority status of plaintiff as an employee with said company was fraudulently and arbitrarily determined by said contract in such fashion that plaintiff lost his correct seniority ranking" and that he "was not given any notice of the making of said contract, and does not know its exact terms and conditions and has no way of ascertaining" them. Further, that respondent railroad's action in denying him his correct seniority status is due solely to the action of the respondent union in making said contract, and that unless the union is restrained from interfering with his seniority status he will lose his employment with respondent railroad for a considerable portion of time as well as the difference of $27.50 per month between the pay of chef and that of second cook; that his dispute with the respondent railroad did not arise because of any dissatisfaction with his services; that he is 66 years old, knows no other kind of work, and the earning of his livelihood is threatened. A demand for restoration was alleged and its refusal, and finally, that "plaintiff took the matter of his seniority status up with the National Railroad Adjustment Board . . . and submitted to them the facts herein set forth" but that the board denied him any relief.

The prayer is for the restoration of appellant by respondent railroad "to his proper status on their seniority lists"; that the respondent union be restrained from interfering with him, his employment, and his seniority status, and that the respondent railroad be required to pay appellant such money as may be due him.

It should be noted that two distinct contracts are mentioned in the pleading, the first, appellant's contract of employment with respondent railroad by which, presumably, he acquired his claimed seniority, the second, the contract between respondent railroad and respondent union, by which he claims to have lost it. ■ With respect to the first contract: Although an unbroken service of over 28 years is pleaded, the allegations show nothing more than an employment from month to month (sections 3001, 2, 3, Labor Code) terminable at the will of either party (section 2922, *Id.*). The circumstance that the employment was merely at will does not mean that the employee is without protection of such rights as he might have thereunder (*Truax* v. *Raich*, 239 U. S. 33 [36 Sup.

Ct. 7, 60 L. Ed. 131, Ann. Cas. 1917B 283, L. R. A. 1916D 545], but the inquiry arising upon the face of this complaint is, just what are those rights? Counsel for appellant concedes that the employment was at will, terminable at any time, but couples that concession with the claim "that the employer, as long as he keeps the employee in his employment, should give him the seniority status that he is entitled to by virtue of a long term of service with said employer . . .". But in the pleading there is nothing to tell the court what is "the seniority status that he is entitled to" or *why* he is entitled to it. The complaint alleges that in June, 1933, when he was demoted "plaintiff was entitled to a rating as a chef cook . . . because of his seniority status" with the respondent railroad. That is the only allegation connecting his contract of employment with his claimed seniority. If he bases such seniority on his contract of employment it would seem that to make out any kind of a case, appellant should have alleged when and how the seniority right became fixed— whether by an express promise made to him or to somebody acting on his behalf; whether by statute, or by a rule, practice, or custom of the employer; its extent or limit; by what terms or to what extent the employer bound itself to respect it, how it might be forfeited, lost or otherwise terminated, and perhaps how it affected appellant's contemporaries and juniors in service. The demurrers of both respondents specially directed attention to this defect in the pleading. The case of *Battle* v. *Atlantic Coast Line R. R. Co.*, 132 Ga. 376 [64 S. E. 463], cited by respondent union, decided (1909) before the enactment of the Railway Labor Act, is directly in point. There the plaintiff sued two railroads after a consolidation, on the ground that he had acquired seniority. There were as here, general and special demurrers to the complaint. The court said: ". . . no cause of action was set out against either defendant. While the petition made frequent references to the plaintiff's 'rights' of priority in the line of promotion in his work, it failed to show that there was any such legal right, or exactly what it was, or how it arose. It showed no contract on the part of any of the companies mentioned, made with him, to employ him for any definite length of time, or not to discharge him except under certain specified circumstances, or that it would promote him in any particular manner." Again: "But it was not shown that he had any contract with the first company which gave

him any definite rights, privileges, or rank, or that he had any contract with the second company on that subject." The action of the court in sustaining the demurrers was affirmed.

The appellant has not charged a breach of the contract of employment itself, for the complaint alleges a continuous service. The alleged grievance is the loss of appellant's "seniority status," but there is nothing to tell the court *the right* upon which the suit is based, *or the source of such right* except the bald statement that the appellant was entitled to the rating as chef because of his seniority status. Taking this allegation at its face value it shows the loss of rating in 1933 by the sole action of the respondent railroad without any interference by the union. Apparently at that time, so far as the complaint shows, no contract had been entered into between the railroad and the union.

With respect to the second contract, the complaint alleges that "the seniority status of plaintiff as an employee with said company was fraudulently and arbitrarily determined by said contract in such fashion that plaintiff lost his correct seniority ranking." It is not possible to tell from this whether appellant claims his seniority status was initiated by this contract or *destroyed* by it. The language would indicate the latter. Without proper allegations as to the origin of the right it is difficult if not impossible to determine the legal consequences of its loss. A number of cases cited by respondent railroad indicate that such seniority rights as those here discussed arise generally, and for the most part, from contracts entered into between a union, acting as the bargaining representative for employees of a class or group (whether members of the union or not) on the one hand, and the railroad-employer on the other. (See, *Capra* v. *Local Lodge etc.*, 102 Colo. 63 [76 Pac. (2d) 738]; *Estes* v. *Union Terminal Co.*, 89 Fed. (2d) 768, and cases therein cited p. 774.) In the Estes case Judge Hutchison in a concurring opinion says, with respect to seniority agreements, "Under the theory and purpose of the statute [Railway Labor Act, 44 Stats. 577, as amended, 45 U. S. Code Ann. sec. 151 et seq.] neither the employee favored, nor those disfavored, by the carrier, have individual legal rights which they can press against the carrier as rights personal to themselves, apart from the collective agreement under which they work. Their rights are those of the class covered by the agreement, arising to the

class and to them as members of the class, by virtue of the agreement, and by virtue of it alone. [Citing cases.]'' The Railway Labor Act (sec. 151a, title 45, U. S. C. A.) provides, *inter alia,* that it is adopted '' (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.'' The next section (152, title 45, U. S. C. A.) subdivision First, provides that: ''It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.'' Subdivision Third of the same section provides that representatives shall be chosen without coercion from carriers or employees and that representatives of the employees *need not be in the employ of the carrier.* Subdivision Fourth provides that: ''Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class. . . .'' It will be observed that this last sentence leaves it to the majority of any craft or class, regardless of union affiliation, to say who their representative shall be. It is not alleged whether this appellant is a member of respondent union. It would seem that would be immaterial for if a *majority* of dining car personnel voted for the respondent union as its bargaining representative, such it would become according to the wording of the act regardless of whether those voting were members of the union, and despite the fact that some of the individuals voting might have voted for an opposing candidate—union or otherwise. Thus we have seen that the act supplies the machinery for the negotiation of a contract such as one dealing with seniority of railroad employees comprised of this, that or the other ''craft or class.'' We have seen, furthermore, under the preceding discussion, that there is no allegation in this complaint which establishes any basis for the seniority status which is claimed by appellant under his contract of employment with the respondent railroad. Appellant alleges that

the contract between the railroad and the union was negotiated "secretly, deliberately, and without notifying plaintiff" and that therein his seniority status was "fraudulently and arbitrarily determined" to his detriment. Under the act, if appellant had voted for the respondent union as bargaining agent—or, for that matter, if respondent union had been elected as such by a majority of dining car personnel even despite appellant's adverse vote—he would not necessarily know of, or be entitled to notice of, the negotiation of the contract itself. As far as the allegations of fraud are concerned, the appellant's statements that his status was "fraudulently and arbitrarily determined" present no issuable facts (12 Cal. Jur., 801-803). With respect to the allegation that appellant does not know and has no way of ascertaining the exact terms and conditions of the contract between the railroad and the union, it is sufficient to say that appellant could have invoked the provisions of sec. 1000, Code Civ. Proc., as soon as the action was commenced and those of sec. 2021, Code Civ. Proc. as soon as the first demurrers were filed. Notwithstanding these avenues were open, counsel stated to the court when the final ruling was made that he could not change his complaint in any appreciable way, whereupon, on sustaining the demurrers, the court denied leave to further amend.

The fourth section (sec. 153, U. S. C. A., Title 45) establishes the National Railroad Adjustment Board. Subdivision (i) thereof provides that: "The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." It will be observed that this language clearly contemplates a dispute between *an individual employee* and his employer. The appellant's grievance with respect to loss of seniority was clearly within the purview of this section. The face of the complaint shows that appellant invoked the jurisdiction

of the board, as follows: "That prior to the commencement of this action, plaintiff took the matter of his seniority status up with the National Railroad Adjustment Board, Division Three thereof, and submitted to them the facts herein set forth, and said National Railroad Adjustment Board on November 9, 1938, denied him any relief." The act does not provide an exclusive remedy or tribunal. In *Moore* v. *Illinois Central R. R. Co.*, 312 U. S. 630 [61 Sup. Ct. 754, 85 L. Ed. 1089], the Supreme Court held that an aggrieved employee was not compelled under the act to exhaust the administrative remedies granted him by it. Following this decision the 7th Circuit Court of Appeals in *Adams* v. *New York C. & St. L. R. Co.*, 121 Fed. (2d) 808, 810, held that "the employees' action may be brought, at their election, either in a court, or settled by the administrative remedies prescribed by said Act." The appellant, according to the face of his complaint, made his election and invoked the board's jurisdiction. Subdivision (m) of the last-mentioned section of the act provides ". . . the awards shall be final and binding upon both parties to the dispute, except in so far as they shall contain a money award . . .".

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.