**REYNOLDS v. DENVER & RIO GRANDE WESTERN R. CO. et al.**

No. 3813.

United States Court of Appeals Tenth Circuit.

May 2, 1949.

Rehearing Denied June 13, 1949.

Paul E. Reimann, Salt Lake City, Utah (T. Quentin Cannon, Salt Lake City, Utah, on the brief), for appellant.

Dennis McCarthy, Salt Lake City, Utah (Waldemar Q. Van Cott and Grant H. Bag-ley, Salt Lake City, Utah, on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal by Roger F. Reynolds, from the judgment of the United States District Court for the District of Utah, dismissing with prejudice his action against the Denver and Rio Grande Western Railroad Company,[1] and its Trustees.

Appellant was an employee of the Railroad Company in the capacity of an engineer. He was accused of having failed to respond to a call to take an engine out on a run on the morning of June 7, 1943. He was notified of an investigation to be held with respect to his alleged failure to respond to the call. The investigation at which he was present in person and by a representative was held, and as a result thereof, he was dismissed June 16, 1943. He appealed the decision, in turn, to the Superintendent of the Railroad Company and then to the Assistant General Manager, where the suspension was upheld. Thereupon, he sought and obtained a review by the National Railroad Adjustment Board where judgment was entered against him and in favor of the Railroad Company. Thereafter, he instituted this action in which he asked for reinstatement, damages for lost wages because of the alleged wrongful dismissal, and restoration of all seniority rights. The trial court made detailed findings of fact and conclusions of law. It found that at 4:20 A.M. on June 7, 1943, Reynolds was called by A. M. Montoya, a crew-caller, to operate a locomotive engine to help Train No. 1, at 5:45 A.M. that morning; that at that time Montoya entered Reynolds room, shook Reynolds, awakened him, and had him sign the call book; that before Montoya left the room, Reynolds had got out of bed, was half dressed and the electric light was on in his room; that thereafter Reynolds went back to bed and to sleep again; that at about 5:30 A.M., when Reynolds had failed to appear at the station in answer to the call,

---

[1] Herein called the Railroad Company.

the crew-caller returned a second time to Reynolds' room and told him that the train was waiting for him; that Reynolds finally appeared at the railroad station just as the train was pulling out of town; that in the meantime, when he had failed to appear on time, the Assistant Trainmaster on duty had secured another engineer to take his place.

The court further found that during the morning of June 7, 1943, Reynolds was notified to appear and attend the formal investigation to be held about 4 o'clock P.M. on that day, inquiring into the reasons why he had failed to respond to call; that he appeared at the investigation, together with his personal representative, Delos Boyer; that at the investigation, when asked if he was ready to proceed, he responded in the affirmative; that testimony was heard at such investigation from him and from the crew-caller, Montoya; that the hearing was recorded and a transcribed copy clearly set forth the proceedings had thereat, and that such hearing was fairly and properly conducted and was accurately reported as set forth in an exhibit in the case.

The court found that Reynolds worked continuously from January 1, 1943, to and including June 6, 1943, with the exception of a period of time from May 9, 1943, to May 24, 1943; that he did not lay off on account of sickness during that period of time and that at no time up to and including June 7, 1943, did Reynolds inform the Railroad Company or any of its officials that he was sick or unable to work; that on June 6, 1943, Reynolds did not indicate on the rest register that he was sick and going to lay off work and that he did not want to be called for duty.

The court further found that after his dismissal he wrote Local #888 of the Brotherhood of Locomotive Engineers at Helper, Utah, of which lodge he was a member, and authorized the officers and members of that union to handle the alleged grievance arising out of his dismissal, through the lodge and to the limit; that thereafter through his authorized representatives in the Brotherhood of Locomotive Engineers, he made timely appeal to the Division Superintendent and the Assistant General Manager of the Railroad Company; that his appeal to the Assistant General Manager, Mr. Kemp, was handled by E. O. Frakes, General Chairman of the Adjustment Committee of the Brotherhood of Locomotive Engineers; that Reynolds, thereafter, authorized Frakes as his representative to take an appeal to the National Railroad Adjustment Board; that the appeal was taken to the Adjustment Board on written submissions of fact and argument by J. E. Kemp on behalf of the carrier, and by Frakes, General Chairman, on behalf of Reynolds. The court found that Reynolds' case before the Adjustment Board was handled by Frakes and also by M. G. Leach, Assistant Grand Chief Engineer, and a member of the National Railroad Adjustment Board; that Reynolds authorized and acquiesced in the presentation of his case to the National Railroad Adjustment Board by Frakes and Leach, instructing them as to how he wanted his case presented, and furnishing what he considered to be new and additional evidence, which he desired presented to the Board and that these communications reached Leach, a member of the Board, were acknowledged by him and were considered by the Adjustment Board in executive session.

Based upon these findings, the court concluded, as a matter of law, that the collective agent who handled Reynolds' case before the Board was duly authorized to act as his representative and that at all times during the pendency of his case Reynolds was fully advised as to the status of his case before the Board; and that the administrative proceeding before the Board which was instituted by appellant and the award made, as a result thereof, were final and binding and not subject to judicial review; that Reynolds could not secure specific performance of the collective bargaining agreement of March 1, 1943, because the relationship of master and servant between him and the Railroad Company was terminated June 16, 1943, was never renewed, and that equity will not decree specific performance of an employment contract which has been terminated; and finally that plaintiff was not wrongfully discharged but was properly discharged because of his conduct and acts in failing to answer a call for duty under the circumstances described in the

findings of fact. Judgment was entered upon these findings as above indicated and this appeal followed.

Appellant was a member of the Brotherhood of Locomotive Engineers which by a contract with the Railroad Company dated April 1, 1939, was the employees' bargaining agent. This contract was superseded in almost identical language by a contract dated March 1, 1943, with the Brotherhood of Locomotive Firemen and Engineers. Appellant was not a member of this union. No significance, however, attaches to this since he was represented in the proceedings by representatives of his own choice and the hearing was conducted in conformity with the provisions of the substituted bargaining agreement.

■ Appellant challenges practically all of the essential findings of fact of the court on the ground that they are not supported by the evidence. Thus it is denied that appellant signed the call book, that a true and correct transcript of the record of the hearing of June 7, 1943, was made, that E. O. Frakes was authorized by appellant to handle his case before the National Railroad Adjustment Board. As in all such cases, there is a conflict in the evidence. Appellant denied that he signed the call book and testified that he was ill and unable to respond to the call, but there is also evidence to the contrary. Appellant's position that Montoya's testimony that he signed the call book was improperly received because the call book had been destroyed is not well taken. There is no evidence that there was fraud or bad faith with regard to the destruction of the call book and appellant's authorities holding that in such cases secondary evidence as to the contents of such records will not be received, therefore, have no application. No useful purpose would be served in analyzing in detail the evidence which in our opinion supports the findings of the trial court. Suffice it to say that we have carefully analyzed the evidence and conclude that the court's findings are amply supported by the record.

■ Appellant predicates error upon the court's conclusion of law that the award of the Board in favor of the Railroad Company is final and binding and not subject to judicial review. The Railway Labor Act, § 3, subd. 1(m) 45 U.S.C.A. § 153, subd. 1(m), in part, provides that awards of the several divisions of the Adjustment Board "shall be final and binding upon both parties to the dispute, except insofar as they shall contain a money award." It would seem that this language is clear and susceptible only of one construction, namely, that in cases other than where a money award is made the judgment of the Board is final and binding upon the parties thereto. This is the construction which has been placed upon the provisions of the act by the courts which have considered this question.[2]

The decision by the Supreme Court in the Elgin, J. &. E. R. Co. case (footnote 2) turned upon whether a collective bargaining representative without other authority had statutory authority, under the act, to compromise and settle accrued monetary claims of individual employees. Inherent in the case also was the broader contention that in any event an award by the Board was not a final award and was merely advisory. This contention was disposed of by the Supreme Court in the following language [325 U.S. 711, 65 S.Ct. 1288]: "At the outset we put aside this broadest contention as inconsistent with the act's terms, purposes and legislative history." Upon rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928, Justice Rutledge, again speaking for the court, said: "We adhere to our decision rendered in the opinion filed after the first argument." There is nothing to the contrary in Dahlberg v. Pittsburgh & L. E. R. Co., 3 Cir., 138 F.2d 121, and Moore v. Illinois Central Railroad Company, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, upon which appellant places strong reliance. The Dahlberg case did not seek to set aside an award. It was an enforcement case. All that was decided in the Moore case was that the remedy of the

2 See Austin v. Southern Pacific Company, 50 Cal.App.2d 292, 123 P.2d 39; Washington Terminal Company v. Boswell, 75 U.S.App.D.C. 1, 124 F.2d 235; Elgin, J. & E. R. Co. v. Burley, 325 U. S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886; Berryman v. Pullman Company, D.C., 48 F.Supp. 542.

act was cumulative and not exclusive and that an employee could pursue his legal remedy in court without first exhausting the administrative provisions of the act. We conclude that the adjudication by the Board in favor of the Railroad Company upholding the dismissal of the appellant is final and binding and may not be challenged by the appellant in this proceeding.

Appellant, in effect, makes the further contention that the award is void for what amounts to lack of due process because he was denied a fair hearing, because improper evidence was used, because an incorrect and incomplete record was certified to the Board, and because Frakes was not authorized to prosecute the case to completion before the Board. All of these contentions have been resolved against him by the court's findings which we have approved and we find no merit therein.

It follows, without more, that if the court lacked jurisdiction to set aside the adverse award and adjudication upholding appellant's dismissal by the Board, it was likewise without power to grant appellant any of the other relief he sought. The decision appealed from is therefore affirmed.