**Walter B. EDMUNDS, Appellant,**

v.

**FRANK R. JELLEFF, Inc., A Body Corporate, to the Use of Allied Mutual Insurance Company, A Body Corporate, Appellee.**

**No. 1850.**

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 10, 1956.

Decided Nov. 13, 1956.

Rehearing Denied Dec. 7, 1956.

E. Lewis Ferrell, Washington, D. C., with whom Richard R. Atkinson, Washington, D. C., was on the brief, for appellant.

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief, for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

CAYTON, Acting Judge.

Walter B. Edmunds had at one time been a delivery driver for Jelleff, and it was claimed that over a long period he had failed to turn in cash collections in excess of $2,400; that he had repaid a part of his defalcations but still owed $1,765.05. Suit for that amount was brought against him by Jelleff and by its insurer, Allied Mutual, which had paid the loss and become subrogee. Trial resulted in judgment for plaintiffs and in this appeal by defendant.

Our first question is whether there was error in denying defendant's motion to dismiss for failure of diligent prosecution. The action was commenced in August 1953 by a complaint which was not verified. In March 1955 a verified complaint was filed. In July 1955 default judgment was entered against defendant and an attachment was levied on his salary. On defendant's motion the attachment was quashed and the default vacated; but the trial court refused to dismiss the suit.

Rule 41(e) of the Municipal Court provides among other things that a party who

for six months fails to avail himself of any right arising through default of any adverse party shall be subject to having his action dismissed. The rule also provides that the time in which a delinquent party may move to reinstate "shall start to run from the entry of dismissal by the clerk * * *."

We cannot agree with appellant's contention that the cited rule is so self-operating as to put the plaintiff permanently out of court. No dismissal having been entered, the time for motion for reinstatement never commenced to run, and the case could properly be considered as pending. That leaves the question as to whether the court should have dismissed the case in the exercise of its inherent authority.[1] We think there was no abuse of discretion in refusing so to dismiss. It is true that the case lay dormant for some seventeen months. But there was a sworn showing that after filing suit plaintiff's attorney had tried unsuccessfully more than once to arrange a conference with the defendant; and the attorney also explained that he had written letters to the Army, Navy and Air Corps seeking information which would enable him to comply with the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A.Appendix, § 501 et seq., before applying for final judgment. Obviously these steps need not have consumed seventeen months. But there was no indication that defendant was prejudiced by the delay, and the circumstances are not such as to require a ruling that there was an abuse of discretion in refusing to dismiss the case. Nelson v. American Store Fixture Co., D.C.Mun.App., 119 A.2d 445.

■ The next question concerns the admission of a statement, written and signed by defendant, unqualifiedly acknowledging that he had made the defalcations alleged in the complaint by not turning in monies collected on C.O.D. deliveries over a period of "about 50 weeks". It is argued that this paper was a confession, that it was obtained by coercion and was therefore inadmissible. We find no merit in this contention. "Since the Confessions-rule is peculiar to the situation of the accused in a criminal case, an *admission made under duress* by a party-opponent *in a civil case* is admissible, subject of course to comment on its weight."[2] Moreover there was substantial evidence, which the trial judge was entitled to believe, that there had been no coercion and that defendant's statement was completely voluntary.

■ Error is assigned as to the admission of a "statement of losses" prepared by Jelleff's comptroller, listing names and addresses of parties to whom delivery had been made, with the amounts collected by defendant. The comptroller testified that this summary had been compiled from original records, but that the originals were destroyed in accordance with the company's regular practice of destroying records after three years, and with no knowledge of the steps being taken by the insurance company to recover the money. The statement was compiled for an adjusting company investigating the matter on behalf of the use plaintiff and was admittedly not made in the regular course of Jelleff's business. We agree with appellant that it was not admissible under the Federal Shop Book Rule.[3] It was however the best evidence available, since the original evidence had been destroyed innocently and as part of a routine practice.

Naturally, it would be preferable to show losses by producing original documents[4] or, that where an abstract from voluminous records is utilized, the source material or "entire mass of documents and entries" be

---

1. Barger v. Baltimore & O. R. Co., 75 U.S.App.D.C. 367, 130 F.2d 401.

2. 4 Wigmore on Evidence 7, § 1050(1) (b), (3d ed. 1940).

3. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645.

4. Nunan v. Timberlake, 66 App.D.C. 150, 85 F.2d 407.

accessible to the opposing party.[5] But there is a clearly recognized exception when it becomes necessary to prove the content of documents which are no longer available because destroyed innocently,[6] or in the ordinary course of business. In such situations the law permits secondary evidence if the proponent satisfies the trial judge that there is no reasonable suspicion of fraud.[7] Though the comptroller did not say he made the original entries, he did personally compile the summary. Under all the circumstances the best evidence rule was satisfied.[8]

 Another question concerns a claim by appellant that the Dickson Adjusting Agency, representing the insurance company, had agreed to accept $1,500 in settlement of the claim (less certain credits) payable in monthly installments. Appellant testified he and the adjuster signed an agreement to that effect. His attorney testified he was present when Mr. Dickson said "the company would be satisfied if defendant paid $1500". The attorney described the arrangements and terms as appellant had done. But he admitted that neither he nor his client had read the agreement, and said nothing about any written agreement or its contents, except that the only copy had been retained by the adjusting agency. No written agreement was produced; but plaintiffs introduced a letter from the adjuster to the insurance company, which referred not to an actual compromise agreement, but to a contemplated effort to obtain from defendant an immediate lump sum settlement of $1,500 in lieu of protracted monthly payments on the actual debt of $2,249.95. The letter was written almost three years before the suit was filed, and it is clear that the proposed lump sum settlement was never completed or acted on. On the evidence it was open to the trial judge to rule in favor of plaintiffs for the amount defendant actually owed.

Affirmed.

5. Gross v. United States, 9 Cir., 201 F.2d 780; 4 Wigmore on Evidence 437, § 1230 (3d ed. 1940).

6. Reynolds v. Denver & Rio Grande Western R. Co., 10 Cir., 174 F.2d 673.

7. 4 Wigmore on Evidence 354, § 1198 (3d ed. 1940).

8. 5 Wigmore on Evidence 393, § 1532 (3d ed. 1940).