Wayne ROBERTS, Appellant,

v.

UNITED STATES, Appellee.

No. 84–958.

District of Columbia Court of Appeals.
Submitted Oct. 22, 1985.
Decided April 28, 1986.

Lillian A. McEwen, Washington, D.C., appointed by this court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Bruce A. Peterson and Ilene G. Rosenthal, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

After a bench trial, Wayne Roberts was convicted on twelve assorted counts of burglary, theft of personal property, receiving stolen goods, and forging and uttering stolen checks.[1] He was also convicted on five counts of theft through unauthorized withdrawals from automatic teller machines (ATMs) of the National Bank of Washington.[2] Roberts' main arguments on appeal are: (1) that the trial court improperly admitted the list of ATM transactions into evidence; (2) that there is insufficient evidence to support his convictions for theft from the ATMs; and (3) that he was erroneously convicted of both theft and receiving stolen goods with respect to the same stolen property.

We hold that the list of ATM transactions was admissible as a summary of business records, and that there was sufficient evidence to support the theft convictions. Because it is impossible to determine from the record now before us whether Roberts' convictions for theft of personal property and receiving stolen property are duplicative, we remand the case for clarification, and for resentencing if necessary. The remainder of the convictions are affirmed.

**I.**

Roberts was charged with making five unauthorized ATM withdrawals through use of "Moneymatic" cards stolen from the National Bank of Washington.[3] To prove that the withdrawal transactions had in fact occurred, the government proposed to introduce a list of ATM transactions made on certain accounts after the date when the "Moneymatic" cards were stolen from the bank.[4] The list of transactions was compiled from the bank's computerized transaction records and prepared by assistant bank vice president Robert Hughes.

Defense counsel objected to the introduction of the list on the ground that it was intended to prove something that it was not competent to prove—namely that the listed transactions were in fact unauthorized. The trial court made a preliminary ruling that the list was not admissible as a business record, because it had been prepared for the purpose of litigation. The government then clarified that the list was a summary of computer records offered to prove only that certain ATM transactions took place,[5] not that the transactions were unau-

---

1. *See* D.C. Code § 22–1801(b) (1981) (second degree burglary); §§ 22–3811, –3812(a) and (b) (1985 Supp.) (first and second degree theft); § 22–3841 (1985 Supp.) (forging and uttering); § 22–3832(a) and (c)(2) (1985 Supp.) (receiving stolen property).

2. *See* D.C. Code §§ 22–3811, –3812(a) (1985 Supp.).

3. In fact, 97 "Moneymatic" cards in all were stolen from the National Bank of Washington. Some of these were "test" cards, others bore the names of actual depositors. To obtain access to a depositor's account through the ATM, it is necessary to have not only the card but also the card's secret "identification number." Stolen along with the cards were envelopes (labeled with each depositor's name) which contained the identification number for each stolen card.

4. The list contained 31 transactions that had taken place after the cards had been stolen on accounts to which the stolen cards gave access.

5. The government sought to prove five specific unauthorized withdrawals from ATM machines, by establishing that the withdrawals had taken place, and by presenting testimony from the account holders that they had not made or authorized the withdrawals in question. The list prepared by Mr. Hughes was designed to establish the first of these two points. As the government's attorney pointed out at trial: "... I'm

thorized. Upon his explanation, the trial judge admitted the list as "past recollection recorded."

■ While it is doubtful that the list was properly admitted on that basis,[6] the error, if any, was harmless since the list was admissible as a summary of business records. Under Super.Ct.Civ.R. 43–I(a),[7] a record of business transactions is admissible "if made in the regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such ... transaction ... or within a reasonable time thereafter." The list of ATM transactions was compiled from the bank's computerized transaction records. Hughes testified that the computer records are made in the regular course of business, at the time when bank transactions are made. This foundation is sufficient to qualify the bank's computerized transaction records as admissible business records under Super. Ct.Civ.R. 43–I(a).

■ The question remains whether a list of transactions summarized from the records is also admissible. We conclude that it is. Abstracts or summaries made from "voluminous records" are admissible if the original source material is available for verification of the summary's accuracy. *See R.S. Willard Co. v. Columbia Van Lines Moving and Storage Co.*, 253 A.2d 454, 456–57 (D.C.1969). *See also City of Phoenix v. Com/Systems, Inc.*, 706 F.2d 1033, 1037–38 (9th Cir.1983); *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir.1980) (summaries compiled from computerized records are admissible under the Federal Rules of Evidence if a proper "business records" foundation is laid). Even if the source material is unavailable, a summary of business records is admissible so long as

there is "no reasonable suspicion of fraud". *See Edmunds v. Frank R. Jelleff, Inc.*, 127 A.2d 152, 155 (D.C.Mun.App.1956). In this case, the bank's records were presumably available for verification, and no fraud is alleged.

We repeat that it is clear from the record that the trial court admitted the list only as proof that the ATM transactions took place, not as proof that the transactions were illegal. We are satisfied that the trial court considered the list only as a summary of the bank's computerized transactions records, not as a reflection of Hughes' personal opinion that certain transactions were unauthorized.

## II.

Roberts contends that even if the list of ATM transactions was properly admitted, there is still insufficient evidence to support his convictions for theft from the bank accounts. In determining whether there is sufficient evidence to support the convictions, we view the evidence in the light most favorable to the government, making no legal distinction between direct and circumstantial evidence. *See, e.g., Byrd v. United States*, 388 A.2d 1225, 1229 (D.C. 1978).

■ An official of the National Bank of Washington testified that "Moneymatic" cards and their identification code numbers were stolen from his desk. Some of the missing cards were found in a briefcase in Roberts' possession at the time of his arrest. The summary of the bank computer records indicates that the alleged ATM withdrawals took place. The individual bank customers each testified that the withdrawals were unauthorized. The government also introduced photographs of

---

puzzled as to how else I could show the use of those accounts." Subsequently, testimony was taken from each of the five account holders that they had not made or authorized the specific withdrawals in question.

6. A document may be admitted into evidence as a "past recollection recorded" only if the witness

had first hand knowledge of the events recorded. *See Mitchell v. United States*, 368 A.2d 514, 517 (D.C.1977); E. CLEARY, McCORMICK ON EVIDENCE, § 300 at 864–65 (3d ed. 1984).

7. Rule 43–I applies to criminal as well as civil cases. *See* Super.Ct.Crim.R. 57(a).

Roberts taken by a security camera inside an ATM machine at the time one of the alleged unauthorized withdrawals was made. We conclude that this evidence is sufficient to support the theft convictions.

■ Roberts' somewhat related argument—that the indictment was defective because it alleged theft from the bank instead of theft from the individual customers—is without merit. That deposits in banks become property of the bank, creating only a simple debtor-creditor relationship between bank and depositor, is "universally recognized." *Kondo v. Katzenbach*, 123 U.S.App.D.C. 12, 18, 356 F.2d 351, 357 (1966), *rev'd on other grounds*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967). *See Hardee v. George H. Price Co.*, 67 U.S.App.D.C. 25, 27, 89 F.2d 497, 499 (1937); 9 C.J.S. *Banks and Banking*, § 285 (1938), and cases cited therein. Because the National Bank of Washington owned the money in the individual depositors' accounts, Roberts was properly charged with theft from the bank. The charges in the indictment were accurate and were sufficiently specific to give Roberts notice of the offenses alleged.

### III.

Finally, Roberts contends that he was erroneously convicted of both stealing and receiving the same stolen property. The indictment charged Roberts with six counts of theft of checks, credit cards, and other personal property belonging to several individuals. A single count of the indictment (count 27 or AA) charged Roberts with the lesser included offense of receipt of *all* of the stolen property enumerated in the six separate theft counts. Roberts was convicted on four of the six counts of theft of personal property. He was also convicted of receiving stolen goods under count AA.

■ Receiving stolen property is a lesser included offense of theft. Roberts thus cannot be convicted of both theft and receipt of stolen goods with respect to the same property. *See Franklin v. United States*, 392 A.2d 516 (D.C.1978), *cert. denied*, 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1979). Roberts can, of course, be convicted of receiving any property he was not convicted of stealing. Since Roberts was acquitted on some of the theft charges, the trial court could properly convict him of receiving some (but not all) of the property listed in count AA.

The record shows that the trial court was aware of this potential problem. The trial judge commented in connection with count AA:

> Well, the Court will either have to find him not guilty of receiving or guilty of— couldn't find him both guilty of receiving and larceny ... could he?

■ However, the trial judge never made any specific on-the-record findings with respect to count AA. The judgment and commitment order states only that Roberts was found guilty on count AA, and was sentenced on counts AA and AB[8] to "one year concurrent with any other." The order does not specify whether the guilt finding and sentence applies to receipt of *all* of the property listed in count AA, or only to the property which was not the subject of another theft conviction or included in count AB. Thus, it is impossible for us to determine on this record whether Roberts' conviction and sentence on count AA is duplicative.

We therefore remand the case for clarification of findings and possible resentencing on count AA, and affirm the remainder of the convictions.

*So ordered.*

---

**8.** Count AB does not appear in the indictment. A notation on the trial jacket defines AB as "charge of receiving stolen property the lesser included of Count O." Count O was a charge of second degree theft, of which Roberts was acquitted. Roberts does not challenge his conviction on count AB.