# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 14, 2010

Charles R. Fulbruge III
Clerk

No. 08-20418

U.S. COMMODITY FUTURES
TRADING COMMISSION

Plaintiff-Appellant

v.

ANTHONY DIZONA

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, DAVIS, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

This civil appeal stems from a suit alleging violations of the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* (2002).  The United States Commodity Futures Trading Commission ("the Commission") brought this suit against Anthony Dizona, a commodities trader on the West Trading Desk of Coral Energy Resources, L.P. ("Coral").  The jury found that Dizona had attempted to manipulate the market price of natural gas in interstate commerce in violation of 7 U.S.C. § 13(a)(2).  The jury, however, rejected the allegation that Dizona had knowingly delivered false reports that tended to affect the market price of natural gas in violation of § 13(a)(2).  Both parties filed a motion for judgment

No. 08-20418

as a matter of law. The district court granted Dizona's motion and denied the Commission's motion. The Commission now appeals the judgment, contending that the district court erred in granting Dizona's motion for judgment as a matter of law and as a result, the jury's verdict as to the attempted manipulation charge should be reinstated. The Commission also argues that the district court erred in denying the Commission's motion for judgment as a matter of law and that it is entitled to a new trial on the charge of knowing delivery of false reports. Finding no reversible error, we AFFIRM.

I.    FACTUAL AND PROCEDURAL HISTORY

The Commission is an independent federal regulatory agency that is charged with enforcing the provisions of the Commodity Exchange Act. The Commission filed a complaint for injunctive and other equitable relief in federal district court, alleging that six individuals—an analyst and five traders employed by Shell Trading Gas and Power Company—had engaged in acts that violated the Act. The defendants were in the business of buying and selling natural gas for profit on behalf of the West Desk at Coral in Houston, Texas. The traders on the West Desk traded natural gas at several locations in the western part of the United States. Denette Johnson was the head of the West Trading Desk at Coral. Dizona, Courtney Moore, John Tracy, and Robert Harp were all traders on the West Trading Desk at Coral. Kelly Dyer was an analyst on the West Trading Desk.

The complaint alleged that from October 2001 through June 2002, the defendants entered into transactions calling for the delivery of natural gas on behalf of Coral. The transactions at issue are called "physical" trades of natural gas in interstate commerce. Physical trades require the delivery of a specific amount of natural gas on agreed upon days during the following month. The price of a physical trade is either agreed upon at the time of the trade, a "fixed price" or set by a published index, called an index price. The defendants' duties

included reporting the price and volume data of their trades to reporting services that generated natural gas price indices, such as *Inside FERC Gas Market Report* ("*IFERC*") and *Natural Gas Intelligence* ("*NGI*"). These publications would solicit this data during "bidweek," which was generally the last five business days of a month. The editors of these publications would receive the data from the traders and perform an analysis on the data. Based upon their analysis, the editors would determine an index price. An index price is the editor's "opinion of a value that would represent a central value for natural gas during that bidweek period in that market."

The Commission alleged that the defendants submitted price and volume data to *IFERC* and *NGI* that was not based on actual trades. Thus, the Commission charged that the defendants knowingly delivered price and volume data to the reporting services that was knowingly false or inaccurate in violation of § 13(a)(2). The Commission further charged that the purpose of this false reporting was to attempt to manipulate the natural gas price indices in violation of § 13(a)(2). Five of the six defendants settled with the Commission prior to trial, leaving Dizona as the only remaining defendant.

At the jury trial, the Commission put on evidence that, during bidweek of each month, the traders would send Dyer their "mark," which was each trader's estimate as to what the index price would be the following month. After receiving the traders' marks, Dyer would send an email to the traders that had a chart with information about the delivery locations. For each delivery location, the trader's mark (estimated price) was listed in the first column and the next two columns indicated whether a higher ("Up") or lower ("Down") index price would be "Good" or "Bad" for the West Desk's book. Attached to this email was a spreadsheet for the traders to input their trade data for all fixed-price baseload trades to be reported to *IFERC* and *NGI*. This spreadsheet, which was a shared document on the West Desk's computer network, was circulated by email from

trader to trader.  After all the traders input their trade data, the spreadsheet was sent by facsimile to *IFERC* and *NGI*.  The editors of the publications would perform an analysis on the data reported by the traders and determine the index price.

The bulk of the Commission's evidence had been produced by Coral pursuant to a subpoena and was admitted at trial through the Commission's investigator as a summary witness, Mary Kaminski, who summarized the voluminous exhibits.  To show that Dizona attempted to manipulate the market, Kaminski compared the trading data Dizona input into the monthly spreadsheets that were sent to the natural gas publications with the trade data listed in Exhibit 27.  Exhibit 27 was a spreadsheet that the Commission asserted contained the actual trading data for the relevant time period.  Kaminski testified that her comparison of the data revealed that 300 of the 304 natural gas trades reported to the publications for Dizona's assigned trading locations were not "actual" Coral trades.

The Commission also called an expert, Dr. Elud Ronn, a finance professor at the University of Texas and an expert in the field of energy finance.  Dr. Ronn was retained to determine whether there was a bias in the traders' reporting procedure at the West Desk and whether it was "systematic in nature."  Dr. Ronn testified the West Desk reported in a way that would positively affect Coral's earnings, as indicated by Dyer's "good" indicators, approximately 81 percent of the time.  In other words, the bias was in the direction suggested by Dyer's email message that indicated whether the "up" or "down" price movement would be "good" or "bad."  Dr. Ronn found that the inaccurate data consistently skewed in Coral's favor showed bias.  In addition, Dr. Ronn testified that the volume of natural gas reported was higher than the volume actually traded.  Dr. Ronn determined that the "excess [trading volume] reported was anywhere from

80 to several hundred percent."[1] On cross examination, Dr. Ronn clarified that his "report was for the West Trading Desk as a whole. The numbers that I reported this afternoon were specific to the locations of the defendant." The delivery locations Dr. Ronn examined were the locations at which Dizona traded.

Additionally, the Commission submitted two audiotapes of phone calls in which Dizona was discussing trade data that he would report to the index compilers. On one audiotape, Dizona spoke of reporting trade data to *IFERC*, responding, "I'm reporting the indexes." On another audiotape, Dizona talked to Carol Taylor, a trader in Canada, asking where she wants the price, and she responded "low." Dizona then laughed and asked if "a dollar fifty would be great for you?" He further stated, "Let me test our book and if, if, if I can report it low for you I will." Taylor responded, "That would be great because we don't have enough to even report this month unfortunately." To which Dizona responded, "You can make it up, can't you?' Taylor said, "We can, but we don't feel right about that." Dizona then said, "Oh, you crazy Canadians." At one point, Dizona said he would help her and be her "immoral person," apparently by reporting a low trade. He also referred to "Houston," which was where he was located, as doing the "dirty work for [her]."

Dizona did not testify or call any fact witnesses. He did call Professor Joseph Kalt, an economic consultant and expert in natural gas and oil. Professor Kalt testified that he looked for bias between what Coral reported and the actual prices in the market. He testified that any difference between the West Desk reporting and the index compiler's average was "less than a penny of the average in the market." His opinion was that the prices reported on the Coral spreadsheet were "all right in the range of everybody else" in the market.

---

[1] Indeed, "[t]here was actually one case when the excess was 2000 percent" higher than actual Coral trading volumes.

During the jury's deliberations, it sent out a note to the court inquiring: "In question no. 1 does 'knowingly delivered for transmission' mean that he [Dizona] provided information to be transmitted or that he made the actual transmittal?" In response, the court directed the jury to return to the pertinent part of the instructions. The jury subsequently found that Dizona had not knowingly delivered a false report pursuant to question one. The jury did, however, find that Dizona had attempted to manipulate the market price of natural gas on eight occasions.

Both parties filed motions for judgment as a matter of law. The district court granted Dizona's motion and set aside the jury verdict finding that he had attempted to manipulate the market price of natural gas in violation of § 13(a)(2). The district court denied the Commission's motion. The Commission now appeals.

## II.    SUFFICIENCY OF THE EVIDENCE

### A.    Attempted Manipulation

The Commission contends that the district court erred in granting Dizona's motion for judgment as a matter of law. This Court reviews a district court's grant of judgment as a matter of law de novo, applying the same legal standard as the district court. *Price v. Marathon Cheese Corp.*, 119 F.3d 330, 333 (5th Cir. 1997). Judgment as a matter of law is appropriate after "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a). "In evaluating such a motion, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *Price*, 119 F.3d at 333. Although the court "should review the record as a whole, it must disregard all

evidence favorable to the moving party that the jury is not required to believe"—that is, the Court "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (internal quotations omitted).

The Commission argues that the district court erred in setting aside the jury's verdict that Dizona had attempted to manipulate the market price of a commodity in interstate commerce in violation of 7 U.S.C. § 13(a)(2). Section 13(a)(2) forbids "[a]ny person to manipulate the market or attempt to manipulate the price of any commodity in interstate commerce." The jury found that, on eight occasions, Dizona had attempted to manipulate the market price of natural gas in interstate commerce.

The district court set aside the verdict, finding, among other things, that the evidence did not prove that Dizona committed an act that violated §13(a)(2); instead, it stated that the evidence demonstrated that Dizona was simply giving in-house estimates to his superiors. The Commission sharply disputes this characterization of the evidence. Although the Commission acknowledges that Dizona provided Dyer his in-house estimates, which are his trader's marks on prices, those estimates were not the basis for the charge of attempted manipulation. The Commission asserts that the evidence shows that after Dyer received the traders' marks, she would respond by email with index directions ("good" and "bad"). The charge is that, after receiving the index directions, Dizona would report biased price and volume trade data with respect to his natural gas trades in accordance with Dyer's directions. The Commission further asserts that this data was labeled and intended to be treated as actual trade data—not as in-house estimates.

No. 08-20418

The Commission contends that there is a wealth of evidence to support the jury's verdict. The Commission asserts that "Dizona's reported trades were almost always false and were consistently biased in favor of price changes that would profit his employer." The Commission points to the audiotape of Dizona volunteering to falsify trade data for Carol Taylor, a trader in Canada. The Commission relies on Kaminski's testimony that a comparison of the trading data contained in trial exhibit 27 with data reported to the natural gas publications revealed that most of the reported data was false. The Commission also relies on a "forensic e-mail trail" demonstrating Dizona's role in submitting the data and its proffer of Dizona's interrogatory admissions that he sent trading data to the index compilers.

In response, Dizona counters that the district court did not err in granting his motion for judgment as a matter of law because there was insufficient evidence to sustain the jury's verdict once the hearsay evidence has been excised. Dizona contends that certain exhibits the Commission submitted into evidence constitute hearsay and that this objection was preserved in district court. As Dizona asserts, "in deciding whether [a judgment as a matter of law] should have been awarded, [we] must first excise inadmissible evidence; such evidence 'contributes nothing to a legally sufficient evidentiary basis.'" *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 193 (5th Cir. 2006) (quoting *Weisgram v. Marley,* 528 U.S. 440, 454 (2000)). Thus, we must determine whether the evidence was properly admitted before the jury. We review a district court's evidentiary ruling for abuse of discretion. *United States v. Dixon,* 132 F.3d 192, 197-98 (5th Cir. 1997).

It is undisputed that Coral produced the evidence in question pursuant to a subpoena issued by the Commission. Exhibits numbered 17 through 24 included the emails from the analyst to the traders and the emails forwarding the attached spreadsheet with their reported trades and their marks. Exhibit

8

27 is an Excel spreadsheet that Coral produced in response to a subpoena for the record of Coral's trades during the relevant time period.[2]   During a pretrial hearing, Dizona objected to the admission of these exhibits, asserting that the Commission had failed to demonstrate that the evidence met the business records exception to the hearsay rule pursuant to Rule 803(6) of the Federal Rules of Evidence.   Dizona's counsel objected as follows: "We contend they are not business records.  They were not kept in the ordinary course of business.  They were not kept by someone.  They don't meet any of the criteria of [Rule] 803(6) or (7)."  The district court responded: "I might agree with you, but I don't think that's the criteria for admission and that's why I've overruled it." Although it is clear that the district court overruled the hearsay objection, the basis for admission is unclear.[3]    Subsequently, at trial, Dizona objected to Exhibit 27 during the testimony of Mary Kaminski.  Dizona's counsel again objected based on hearsay and relevance.  During a conference at the bench, the court inquired regarding who compiled the document, and the Commission's attorney asserted that Coral's information technology department compiled Exhibit 27.   Dizona's attorney responded, countering "No, it was not, your Honor."[4]   The court then stated "let's just assume that that's true."  The Commission's attorney then stated that: "Coral maintains a database of trades and that system is, I believe, the Endure system.  And in order to develop this

---

[2]  Exhibit 28 was also an Excel spreadsheet, but the trade data in that exhibit did not involve the trades at issue in this trial.

[3]  In its reply brief, the Commission argues that "many of the documents produced by Coral were admissible on grounds other than the business records exception to the hearsay rule."  However, we note that the Commission does not set forth any specific ground that would allow for admission of Exhibit 27 except that it fell under the business records exception or that it was not offered to prove the truth of the matter asserted.

[4]  We note that, after Dizona's challenge to the Commission's attorney's explanation of how Exhibit 27 was created, the Commission offered no evidence to establish that the requirements of Rule 803(6) had been met.

No. 08-20418

Excel spreadsheet, they downloaded information directly out of Endure into this Excel spreadsheet." The attorney's assertions appear to attempt to lay the foundation for admission based upon the business records exception to the hearsay rule under Rule 803(6). However, as Dizona has argued, counsel's assertions do not constitute evidence and thus cannot lay the foundation for Rule 803(6).

Dizona asserts that because the Commission did not call a Coral employee with personal knowledge to establish the documents as business records under Rule 803 of the Federal Rules of Evidence, the evidence was hearsay. With respect to Rule 803(6), "[t]he exception requires that either the custodian of the business records or 'other qualified witness' lay a foundation before the records are admitted." *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008). However, "[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy." *Id.* (footnote and internal quotation marks omitted). "A qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met." *Id.* (footnote and internal quotation marks omitted). Rule 803(6) provides, in pertinent part, that:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

No. 08-20418

In the case at bar, Kaminski, the Commission's investigator, testified only as a summary witness.[5] Kaminski did not interview any Coral employee or have any knowledge regarding the keeping of the records. On cross examination, Kaminski admitted that she did not know whether the spreadsheet was made at or near the time of the trade. She also admitted that she did not know whether the spreadsheet was made by a person with knowledge of the trade. She had no information about how the record was produced. Kaminski testified that her only previous experience with natural gas commodities was as a broker trading these commodities over the phone. Indeed, she had never investigated an irregularity in natural gas trading during her time with the Commission. Moreover, the district court instructed the jury that Kaminski's testimony "is not independent evidence of the subject matter and is only as valid and reliable as the underlying admitted evidence it purports to summarize." Under those circumstances, Kaminski, in her role as a summary witness, was not a qualified witness who could explain Coral's record keeping system and vouch that the requirements of the rule had been met. *See Brown*, 553 F.3d at 792-93 (explaining that although the expert witness had undisputed knowledge and expertise with respect to the business's computer program, the expert was not a qualified witness under Rule 803(6) because he had no knowledge of the business's record keeping procedures or practices). We therefore conclude that the exhibits were not properly admitted under Rule 803(6).[6]

---

[5] This Court has found the use of a summary witness appropriate in complex cases to summarize voluminous records. *E.g., United States v. Ollison*, 555 F.3d 152, 162 (5th Cir. 2009).

[6] We recognize that a government agent can serve as a "qualified witness" for purposes of Rule 803(6). *E.g., United States v. Veytia-Bravo,* 603 F.3d 1187, 1191-92 (5th Cir. 1979). Nonetheless, to be a qualified witness the government agent must still be able to explain the record keeping system and vouch that the requirements of the rule had been met. *See id.* (explaining that the requirements of Rule 803(6) were met by the agent's testimony that the records were compiled pursuant to regulations that required the dealer to make a contemporaneous record of each sale as part of its regular course of business). *See also Conoco*

11

No. 08-20418

Nonetheless, in its reply brief and at oral argument before this Court, the Commission asserted that because it did not rely on the evidence to establish the truth of the matter asserted, the evidence did not constitute hearsay. More specifically, the Commission asserted that the entries Dizona made in the spreadsheets in Exhibits 17 through 24 were false and thus, it was not offering those exhibits to prove the truth of the matter asserted. However, even assuming *arguendo* that assertion is correct, it does not apply to Exhibit 27, the spreadsheet that Coral produced in response to a subpoena for information regarding trades during the relevant time period. Kaminski compared the "actual" trade data in that spreadsheet with the data reported to the natural gas publications to demonstrate that Dizona had submitted false information. Indeed, in its brief, the Commission contends that there is a "wealth of evidence" that supports the jury's verdict, stating that "[t]here was the comparison of the trading data contained in . . . Exhibit 27 . . . with Coral's reported data to *Inside*FERC and NGI." Therefore, contrary to the Commission's assertion, Exhibit 27 was offered for to prove the truth of the matter asserted.

We recognize that prior to trial the Commission filed a motion requesting the district court to find that Dizona had waived his objections to the authenticity of the Commission's exhibits. Pursuant to Southern District Local Rule 44.1, the district court found that Dizona had waived his authenticity

---

*v. Dept. of Energy,* 99 F.3d 387, 391 (Fed. Cir. 1996) (explaining that "as long as the witness understands the system used to prepare the records," the witness is qualified to lay the foundation for the admission of records under Rule 803(6)). In the instant case, the record is entirely devoid of such testimony and thus the necessary predicate was not laid for admission of Exhibit 27.

12

No. 08-20418

objections.[7] However, we do not interpret the district court's ruling as finding that the exhibits had been authenticated for purposes of Rule 803(6).[8]

In any event, in the context of Rule 803(6), this Court has explained that "authentication alone is not enough." *United States v. Robinson,* 700 F.2d 205, 210 (5th Cir. 1983). In *Robinson*, the defendant objected to the admission of handwritten notes that had been taken during a county board of supervisors meeting. *Id.* The notes had been introduced along with a packet of county documents through the county records custodian. *Id.* This Court explained that, although the notes had been properly authenticated, "[f]or the notes to be admissible under Rule 803(6), the government also had to establish that 'it was the regular practice of that business activity' to have the notes made." *Id.* (quoting Rule 803(6)). Because the government failed to do so, this Court found that the notes should not have been admitted. *Id.* In the instant case, there was no showing that it was Coral's regular practice to make Exhibit 27. Accordingly, the authentication ruling standing alone is insufficient to meet the requirements of Rule 803(6). We therefore conclude that the district court abused its discretion in admitting Exhibit 27.

We must now determine whether the evidence is sufficient to support the jury's verdict without considering Exhibit 27. As previously set forth, in addition to the summary witness's testimony, the Commission called Dr. Ronn as an expert who testified that the West Desk reported in a way that would positively

---

[7] *See* S.D. L.R. 44.1 ("A party requiring authentication of an exhibit must notify the offering party in writing within five days after the exhibit is listed and made available. Failure to object in advance of the trial in writing concedes authenticity.").

[8] When Dizona's counsel objected to the exhibits because they were not kept in the ordinary course of business and thus did not meet the requirements of Rule 803(6), the district stated: "I might agree with you, but I don't think that's the criteria for admission and that's why I've overruled it." The court's response does not indicate that it was admitting the exhibits under Rule 803(6). Clearly, the hearsay objection based on Rule 803(6) was not waived.

affect Coral's earnings, as indicated by Dyer's "good" indicators, approximately 81 percent of the time. On cross examination, when specifically asked whether he had analyzed Dizona's individual trades, Dr. Ronn responded: "In my testimony this afternoon, those locations were the trading locations for which the defendant was responsible. So, I don't know if that's responsive to your question or not." Dr. Ronn further explained that his "report was for the West Trading Desk as a whole. The numbers I reported this afternoon were specific to the locations of the defendant." It appears that to the extent that Dr. Ronn considered the individual traders' data, he grouped Dizona's and Harp's trades. Indeed, Dr. Ronn testified that although he attributed certain trades to Dizona, he was "not exactly clear on the relationship of Mr. Harp and Mr. Dizona. I have a sense that they worked together, and so that sense is what caused me to put this together as I did in Table 4." When asked whether he could "tell this jury whether this gentleman that's on trial here made any entry onto a spreadsheet," Dr. Ronn responded that he "cannot."

Additionally, as previously set forth, the Commission submitted two audiotapes of phone calls in which Dizona was discussing trade data that he would report to the index compilers. Dizona's statements on the audiotape are incriminating but too vague to sufficiently support the jury's finding that he attempted to manipulate the price of natural gas on eight occasions. Under our de novo review, we are not persuaded that Dr. Ronn's general finding of biased reporting at Coral's West Desk and Dizona's incriminating statements on the audiotape are sufficient to demonstrate that Dizona made false entries into the spreadsheets that were sent to the publications. With this evidence alone, the Commission cannot show that Dizona attempted to manipulate the market price of natural gas in violation of § 13(a)(2). Thus, we affirm the district court's judgment vacating the jury's verdict with respect to the attempted manipulation charge.

14

No. 08-20418

B.     Delivery of False Reports

As previously set forth, the jury rejected the allegation that Dizona had knowingly delivered false reports that tended to affect the market price of natural gas in violation of § 13(a)(2).  The Commission's theory was that Dizona sent the spread sheets containing the false trades to the natural gas publications.   After the verdict, the district court denied the Commission's motion for judgment as a matter of law.   As discussed in section II. A, *supra,* Exhibit 27 was inadmissible hearsay.  Without the evidence of the actual trades in Exhibit 27, the evidence is insufficient to demonstrate that Dizona had knowingly delivered *false* reports that tended to affect the market price of natural gas in violation of § 13(a)(2).   Thus, we affirm the district court's judgment refusing to overturn the jury verdict with respect to the delivery of false reports charge.[9]

For the foregoing reasons, the district court's judgment is AFFIRMED.

---

[9]   Although the Commission raises other arguments, in view of our finding that the evidence was insufficient to sustain either charge, we need not reach the remaining arguments.

15

No. 08-20418

REAVLEY, J., Dissenting:

I would render judgment of conviction on the basis of the jury verdict. The defendant argues for the acquittal, and the panel majority so holds, principally because of the inadmissibility of Exhibit 27 as business record hearsay. The district court admitted Exhibit 27 into evidence, and I see that as no abuse of discretion.

This exhibit was produced by the defendant's employer in response to the government's subpoena to deliver the record of its trades. The Commission moved prior to trial requesting waiver by defense to the authenticity of the exhibit, and the court ruled objections were waived.

The Commission's experienced investigator explained that the practice was for defendant as the trader to transmit his trade data to become the values shown on Exhibit 27. The defendant received the database made from his e-mails, and the database was downloaded into Exhibit 27. While this witness did not have personal knowledge of details of operation of this particular company, there was no evidence disputing this explanation.

There was no contention or evidence from defendant that there was any impropriety or error in the trading values shown in Exhibit 27.

No. 08-20418

The trial was perfectly fair and the proof of this exhibit was accepted and acceptable.  No precedent requires this panel ruling.  I regard it as a misuse of the rules of evidence and dissent.