**Antoine C. DUTCH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 07–CM–1205.**

District of Columbia Court of Appeals.

Submitted Feb. 4, 2010.

Decided June 24, 2010.

Khadijah R. Ali, Washington, DC, appointed by the court, was on the brief for appellant.

Channing D. Phillips, Acting United States Attorney at the time the brief was filed, and Roy W. McLeese III, Mary B. McCord, J.P. Cooney, and Jeremy S. Barber, Assistant United States Attorneys, were on the brief for appellee.

Before KERN, BELSON, and STEADMAN, Senior Judges.

STEADMAN, Senior Judge:

Appellant Antoine Dutch appeals his conviction at a bench trial for attempted uttering; namely, cashing a forged check. His principal challenge on appeal is to the introduction as "business records" of two documents derived from information stored on computers. Finding no error, we affirm.

## I.

The evidence presented to the trial court evidenced the following. On April 5, 2005, a customer walked into Malcolm Liquors and approached the store's check-cashing station. Working at the check-cashing station was the store's owner at the time, Houng Hoon Seo, who testified at trial. The customer presented a check to be cashed in the amount of $671.50, apparently issued by Thompson Hospitality Services, LLC, made payable to Antoine Dutch. Because this customer had never cashed a check at Malcolm Liquors before, Seo undertook a series of steps, which he "always" followed with new customers. He first asked for a government-issued photo ID. He compared the photo on the ID with the customer standing in the store, to make sure it was the same person. He compared the name on the check with the name on the photo ID, which was "Antoine Curtis Dutch." He then scanned both the check and the ID into his computer for transmission to Pay By Touch, a financial transaction processing company. Further, he took a photograph of the customer and scanned that into his computer, also to be sent to Pay By Touch. Finally, he asked the customer to place his finger on the Pay By Touch terminal to create a digital image of his fingerprints. Seo followed these steps for all first-time customers; when a returning customer, whose information had already been submitted into the Pay By Touch system, wanted to cash a check, all he needed to do was place his finger on the Pay By Touch terminal again, and all of the information would display on Seo's computer screen, in one convenient record. Although Seo did not provide an in-court identification of appellant, he testified that he was satisfied on April 5, 2005, that the picture on the driver's license was a picture of the man standing in front of him in the store.

After taking these steps on April 5, 2005, Seo cashed the customer's check. Seo's bank later determined, and Dutch does not dispute on appeal, that the check was "fake." As part of a broader investigation into the passing of counterfeit checks, Secret Service Special Agent Gregory Jones reviewed Dutch's transactions at Malcolm Liquors. After speaking with Seo and reviewing the Pay By Touch records accessible at the liquor store, Special Agent Jones arrested Dutch. In court, he identified Dutch as the person he arrested.

Pay By Touch's Vice President of Technology, John McNally, testified about the computer records created and collected by Pay By Touch on behalf of its merchant clients. He testified that images of a customer's ID, fingerprints, photo, and previously cashed checks are all kept in a single

record, maintained by Pay By Touch. Pay By Touch stores the information for the merchant and also makes it available to other merchants, to allow them to see if there is any "negative information" about a customer.

During the trial, the Government succeeded in entering, over Dutch's objection, two paper exhibits reflecting the various forms of identification collected by Seo and Pay By Touch in connection with the fraudulent transaction. One of them, entered as "Exhibit 2," was entitled "Returned Items Transaction Report." It contained images of the photo ID for "Antoine Curtis Dutch," the in-store photo, fingerprints, and check cashed by the customer in the store, and it listed the date of the transaction, April 5, 2005. The other, entered as "Exhibit 6" and also entitled "Returned Items Transaction Report," contained the same information as Exhibit 2, along with information about subsequent transactions between "Antoine Curtis Dutch" and Malcolm Liquors. Special Agent Jones testified that Exhibits 2 and 6 were reports he received when, as part of his investigation, he subpoenaed all records from Pay By Touch relating to Dutch. Jones also testified that he recognized Exhibit 2 as the same as the record he reviewed on Seo's computer screen during his investigation. Seo testified that Exhibit 2 was a fair and accurate depiction of the record to which he has access at his store, with the exception of the fingerprints, which do not appear on his computer when he accesses the record.[1]

McNally testified that the records presented for trial were the same records as those kept in Pay By Touch's computer

system. In preparation for trial, he accessed the Pay By Touch system and produced reports identical to Exhibits 2 and 6, in order to confirm that no changes had been made to the data contained therein since "the initial record creation." He stated that Exhibit 6 was simply "the rest of the report" contained in Exhibit 2, showing the later transactions by "Antoine Curtis Dutch" at Malcolm Liquors, so identified by the fingerprint provided on the Pay By Touch screen when those later checks were cashed. When asked directly whether Exhibit 6 was a "business record" created by Pay By Touch, he stated, "It is."

The trial court found the defendant guilty as charged.

## II.

■■■ Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Gardner v. United States,* 898 A.2d 367, 374 (D.C.2006); *Mercer v. United States,* 864 A.2d 110, 117 (D.C.2004). A statement, though hearsay, will be admissible if it falls under an exception. *See, e.g., Johnson v. United States,* 980 A.2d 1174, 1185 (D.C.2009) (excited utterance); *Gardner, supra,* 898 A.2d at 374 (present-sense impression). A well recognized exception to hearsay is the "business records" exception, otherwise entitled the exception for "records made in regular course of business." *See Clyburn v. District of Columbia,* 741 A.2d 395, 397 (D.C.1999); *Giles v. District of Columbia,* 548 A.2d 48, 53 (D.C.1988); *see also* Super. Ct. Civ. R. 43–I. In order to qualify evidence under the exception, the proponent

---

1. Seo's testimony, given through an interpreter, was not entirely clear on this point. At one point in his testimony, he stated, "my computer doesn't show the fingerprints." At a later time, he stated that the fingerprint portion of the record did "come up" on his computer screen but that he did not know "how to read it." Given Seo's uncertainty, we read the record as reflecting that the trial court concluded that Seo did not recognize the fingerprint portion of the report as being part of his records at Malcolm Liquors.

must show (1) that the record was made in the regular course of business, (2) that it was the regular course of the business to make such records, (3) that the record was made at the time of the act, transaction, occurrence, or event, or within a reasonable time thereafter, and (4) that the original maker has personal knowledge of the information in the record or received the information from someone with such personal knowledge and who is acting in the regular course of business. *Allstate Ins. Co. v. Curtis*, 781 A.2d 725, 727 (D.C.2001); *Clyburn, supra,* 741 A.2d at 397; Super. Ct. Civ. R. 43–I. We review a trial court's decision to admit hearsay evidence for abuse of discretion; however, the determination of whether a statement falls under an exception to the hearsay rule is a legal conclusion, which we review *de novo. Brown v. United States*, 840 A.2d 82, 88 (D.C.2004).

Dutch argues that the Pay By Touch transaction report documents introduced as Exhibits 2 and 6 did not fall under the business records exception because (1) they were not business records of Malcolm Liquors, (2) the Government did not establish it was the normal course of business for the company to make these records, and (3) the Government did not establish that the records were made within a reasonable time after the events in question. We disagree.

While the evidence may not have conclusively established that Exhibits 2 and 6 reflected business records of Malcolm Liquors—given Seo's uncertainty about the fingerprint portions—we are satisfied that they were admissible as business records of Pay By Touch. McNally's testimony showed that all of the data used to create Exhibits 2 and 6 were data stored in Pay By Touch's system created and used by its merchants in the regular course of their check-cashing businesses. Further, McNally was able to create documents identical to Exhibits 2 and 6 from the Pay By Touch system. The fact that the creator of the actual two documents used in court did not testify to their creation does not disqualify their admissibility. McNally's testimony, along with Seo's and Jones', gave adequate reason to trust the authenticity and the accuracy of the documents and the computer data set forth therein. *See Meaders v. United States*, 519 A.2d 1248, 1256 (D.C.1986) ("The person who actually writes the information on the document does not need to testify so long as other evidence establishes its trustworthiness."); *United States Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 415 (5th Cir.2010) ("no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy") (internal citation omitted) (construing FED. R.EVID. 803(6)); *Conoco v. Dep't of Energy,* 99 F.3d 387, 391 (Fed.Cir.1996) (witness is qualified to lay the foundation necessary for the exception "as long as the witness understands the system used to prepare the records"). Here, McNally's detailed testimony about how the system functions to gather and store the data, together with Seo's testimony about how he collected the particular data at issue in this case, established how the records were created and what business purpose they served. Finally, Jones' testimony established that the reports in question came directly from Pay By Touch.

■ The electronic nature of the reports does not call the applicability of the business records exception into question. This court, along with other courts, has not treated data created and stored electronically any differently from other data for the purposes of the exception. *See Roberts v. United States*, 508 A.2d 110, 112 (D.C.1986) (holding admissible, under the business records exception, a list of ATM transactions compiled from a bank's com-

puterized transaction records); *Rosenberg v. Collins,* 624 F.2d 659, 665 (5th Cir.1980) ("computer data compilations ... should be treated as any other record of regularly conducted activity"); *Dyno Constr. Co. v. McWane, Inc.,* 198 F.3d 567, 575 (9th Cir. 1999) (admitting "voluminous computerized records" as business records under the exception). The fact that a computer system may not contain an actual document in the precise hard copy form by which that data are presented in court does not render the hard copy evidence inadmissible hearsay. In an increasingly technological world, courts would well nigh eviscerate the exception if they adopted a contrary policy.

■ Dutch asserts that the Government did not show the reports were created "at the time of [the] act, transaction, occurrence, or event or within a reasonable time thereafter." Super. Ct. Civ. R. 43–I(a). He argues, "The Defendant was tried more than a year after the transactions were made," and "there is no testimony regarding when the documents were made." Appellant's argument wrongly substitutes the word "document" for the word "record" in the exception. *See, e.g., Clyburn, supra,* 741 A.2d at 398. Put another way, appellant's argument misconceives the business records exception because it fails to recognize the distinction between data stored on computers and the manner in which such data are presented to the court. While it is true that no evidence showed when the paper documents were created, evidence was presented that the *records*—consisting of the electronic data stored on Pay By Touch's computer system—were created at or reasonably close to the time of the transaction.[2] *See Roberts, supra,* 508 A.2d at

112. It is the data, not the particular format in which the data are stored or presented, that constitutes a business record. *See id.*

■■ The issue of whether the data stored on a computer comply with the requirements of the business records exception is an issue distinct from the question of whether the presentation of those data as evidence in the courtroom accurately reflects the data stored in the computer. This question is governed by the normal rules relating to the establishment of a proper foundation for proffered evidence. *See Patton v. United States,* 633 A.2d 800, 810 (D.C.1993) (once proponent identifies hearsay exception in response to objection, trial court has obligation to ensure proper foundation has been laid for determination of whether exception applies); 2 McCormick on Evidence § 212 (6th ed. 2006) ("[a]n item may be admitted into evidence only after the proponent has offered some evidentiary foundation to show that the item really is what the proponent claims it to be"). The threshold requirement of adequate foundation would apply to situations where the business record itself is kept in traditional written form but the record itself is not introduced, but instead the proof is, for example, a photocopy of the record. *See Walker v. United States,* 402 A.2d 813, 814 (D.C.1979) (no error in admitting photocopies of credit card invoices in prosecution for attempted uttering where reasonable search was made for originals); *see also* Fed.R.Evid. 1003 (duplicate is admissible to the same extent as original unless (1) genuine question raised as to authenticity of the original, or (2) admission of duplicate in lieu of original would be unfair under the circumstances).

---

**2.** An excerpt from McNally's direct examination illustrates the distinction between the paper document and the underlying record:

Q. Now, is Government's Exhibit No. 2 a document that is kept by Pay By Touch?
A. Not per se a document but the data that produces [sic] the document.

■ Insofar as appellant implicitly raises a question, for the first time on appeal, about the authenticity of the documents as fair and accurate representations of the underlying computer records, we discern no error in their admission. *See Settles v. United States,* 570 A.2d 307, 309 (D.C. 1990) ("[p]roof of the authenticity of the writing need not be established by direct testimony but may be established by the nature and contents of the writing combined with the location of its discovery"); *Stewart v. United States,* 881 A.2d 1100, 1111 (D.C.2005) (clarifying that District of Columbia courts have not adopted the per se "authenticity" requirement of FED. R.EVID. 901, but rather require "reasonable possibility" that evidence relates to the crime charged). To the extent that appellant's claim can be construed to raise such a challenge, it would be reviewable for plain error only, if error at all. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In the circumstances presented here, where Jones' testimony identified the documents presented in court as coming directly from Pay By Touch and McNally's testimony identified the documents as containing data identical to those present in the original records, the trial court in no way erred in failing *sua sponte* to exclude them for lack of proper foundation or authentication.

■ Even if we were to conclude that the documents presented in court constituted merely a "summary" or selected portions of the computerized records kept by Pay By Touch, we would hold them admissible. In *Roberts,* we held a list of ATM transactions that had been "summarized" from a bank's computerized records for the purposes of trial was admissible as a business record where the evidence showed that the computerized records themselves were created at the time the bank transactions were made and there was "no reasonable suspicion of fraud." 508 A.2d at 112. The same reasoning holds true here. Seo testified that he collected the information contained in Exhibit 2 on April 5, 2005, the precise date of the transaction at issue. Further, the Exhibits themselves list a "Transaction Date" of April 5, 2005, and an "Enroll Date" that is exactly the same. McNally testified that the "Enroll Date" refers to the date the customer's information was entered into the Pay By Touch system. McNally also testified that he made sure none of the information had been altered since the date of its entry into the system. Finally, the express purposes of the Pay By Touch system were (1) to allow merchants participating in Pay By Touch to see the complete reports of customers who have used Pay By Touch at other stores, and (2) to allow ease of service to customers cashing checks for a second and third time at the same location. It is reasonable to conclude that for these functions to be effectuated, the information would be compiled reasonably soon after the initial transaction. Finally, as in *Roberts,* appellant has not given this court or the trial court any reason to suspect fraud.

To summarize, the evidence at trial showed that the data themselves met the requirements of the business records exception, and appellant can mount no serious challenge to the authenticity of the documents themselves. We therefore hold that the trial court did not abuse its discretion by admitting the documents into evidence.[3]

3. Appellant's other arguments on appeal may be dealt with summarily. The evidence presented was sufficient to support the finding of guilt under our well-established and oft-repeated standard of review. *See, e.g., Dunn v. United States,* 976 A.2d 217, 221 (D.C.2009). The trial court did not err in this bench trial by refusing to declare a mistrial when U.S.

The judgment appealed from is
*Affirmed.*

marshals appeared in court to arrest appellant on an outstanding warrant; the trial court noted that the warrant had "nothing to do" with the trial and that it could "disregard any significance" of the event. *See Singletary v. United States,* 519 A.2d 701, 702 (D.C.

1987). Finally, no plain error occurred in the admission of Seo's testimony, objected to for the first time on appeal as an impermissible out-of-court identification. *See Olano, supra,* 507 U.S. at 732, 113 S.Ct. 1770.