COLORADO COURT OF APPEALS                                    2016COA148

Court of Appeals No. 13CA0547
Jefferson County District Court No. 11CR3036
Honorable Christopher J. Munch, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Raymond Lee Ortega,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE ROMÁN
Lichtenstein and Sternberg*, JJ., concur

Announced October 20, 2016

Cynthia H. Coffman, Attorney General, Brian M. Lanni, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Stephen C. Arvin, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1    Defendant, Raymond Lee Ortega, appeals his conviction for aggravated robbery, as well as his adjudication as a habitual offender. We affirm.

## I. Background

¶ 2    Two men, one wearing a stocking over his head and one unmasked, held up a fast-food restaurant. The unmasked man pointed a handgun at the employee behind the register and demanded money. He then shot the employee in the arm as the employee fled. When the two men were unable to open the register, they carried it off.

¶ 3    From the restaurant's surveillance video, the police identified the unmasked man as David Maestas. The police also found a car belonging to Maestas's wife, which they believed had been used during the robbery.

¶ 4    A search of the car turned up, among other things, a cell phone and a pair of jeans consistent with those worn by the masked man in the surveillance video. Analysis showed that defendant's DNA was on the waistband and in the pockets of the jeans. The cell phone belonged to Maestas's wife, but she testified that Maestas also used the phone and had taken it from her a

couple of weeks before the robbery. Phone records showed several calls in the days around the robbery from this cell phone to a number identified in the phone's contact list as "Ray's mom."

¶ 5    A jury convicted defendant of aggravated robbery. After a separate trial, the court adjudicated defendant a habitual criminal.

¶ 6    Defendant appeals both his conviction for aggravated robbery and his adjudication as a habitual offender. He contends that (1) his right to confrontation under both the United States and Colorado Constitutions was violated by admission of the cell phone records and the custodian's certification; (2) he was denied a fair trial because the prosecutor misstated the DNA evidence; and (3) during his habitual trial, his right to confrontation under the state constitution was violated by admission of sentencing and prison records.

## II.  Defendant's Confrontation Right Pertaining to Phone Records

¶ 7    Defendant contends that the admission of phone records violated his right to confrontation under both the United States and Colorado Constitutions. We disagree.

### A.  Admission of Phone Records

¶ 8    The investigating detective testified that he requested from the phone company, Cricket, records pertaining to the phone number attached to the cell phone found in the car.  The detective testified that he received a CD from Neustar, Inc. (Neustar), the company that kept Cricket's records, with a declaration from the custodian of records attached.  The detective testified, based on the records, that there had been a number of calls from the cell phone to a certain number three days before the robbery, as well as on the days before and after the robbery.  The detective testified that the receiving number was labeled in the cell phone's address book as "Ray's mom," and that when he called the number, the recorded message reported, in a female voice, that he had reached the Ortegas.

## B.  Federal Confrontation Clause

¶ 9    Under the United States Constitution, a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In 2004, the Supreme Court explained that when a declarant does not testify at trial, testimonial statements are admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  *Crawford v. Washington,* 541 U.S. 36, 59 (2004).  The

3

Supreme Court later held that, under the *Crawford* formulation, *non*testimonial hearsay does not implicate the Federal Confrontation Clause. *See Michigan v. Bryant*, 562 U.S. 344, 354-59, 378 (2011); *People v. Phillips*, 2012 COA 176, ¶ 75.

¶ 10     "Testimony" is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51 (alteration in original) (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). "Testimonial statements" include

> *ex parte* in-court testimony or its functional
> equivalent — that is, material such as
> affidavits, custodial examinations, prior
> testimony that the defendant was unable to
> cross-examine, or similar pretrial statements
> that declarants would reasonably expect to be
> used prosecutorially; extrajudicial statements
> . . . contained in formalized testimonial
> materials, such as affidavits, depositions, prior
> testimony, or confessions; statements that
> were made under circumstances which would
> lead an objective witness reasonably to believe
> that the statement would be available for use
> at a later trial.

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (alteration in original) (quoting *Crawford*, 541 U.S. at 51-52). More concisely, where "a statement is not procured with a primary

4

purpose of creating an out-of-court substitute for trial testimony," the Confrontation Clause is not implicated. *Bryant*, 562 U.S. at 358-59.

¶ 11 According to defendant, the trial court erred by admitting the phone records in violation of his federal right to confrontation. He argues that (1) the phone records were testimonial and (2) the declaration of the custodian for the phone records was testimonial. We disagree with both arguments, concluding instead that the trial court correctly determined that the phone records and attestation were not testimonial and thus not subject to the Confrontation Clause.

¶ 12 In *United States v. Yeley-Davis*, 632 F.3d 673 (10th Cir. 2011), the Tenth Circuit considered and rejected similar arguments that both cell phone records (admitted pursuant to the business records hearsay exception) and a certification by the custodian of records were testimonial. The Tenth Circuit concluded that the phone records were not testimonial because they were kept in the course of the phone company's regularly conducted business, rather than created simply for litigation. *Id.* at 679. As to the custodian's certification of the phone records, the Tenth Circuit acknowledged

that the custodian "objectively could have foreseen that the certification and affidavit might be used in the investigation or prosecution of a crime." *Id.* at 680. Nonetheless, that court held that certificates of authenticity, the purpose of which is merely to authenticate the phone records and not to establish or prove some fact at trial, are not testimonial. *Id.*

¶ 13 We are persuaded by the reasoning in *Yeley-Davis* and apply it in this case. Here, according to the declaration from the custodian of records, the records of defendant's phone activity introduced in this case

> a) Were made at or near the time of the occurrence of the matters set forth in the records by, or from information transmitted by a person with knowledge of those matters;
>
> b) Were kept in the course of a regularly conducted business activity; and
>
> c) Were made by the regularly conducted activity as a regular practice.

Because the records, made at or near the time of the phone activity, were made and kept as a regular practice in the course of Neustar's regularly conducted business activity, and not for the purpose of establishing or proving some fact at trial, the phone records are not

6

testimonial. *See id.*; *United States v. Green*, 396 F. App'x 573, 574-75 (11th Cir. 2010) ("[B]ecause the [cell phone] records were generated for the administration of Metro PCS's business, and not for the purpose of proving a fact at a criminal trial, they were non-testimonial, and the district court did not violate [the defendant's] constitutional right [to confrontation] by admitting them into evidence."); *People v. Marciano*, 2014 COA 92M-2, ¶ 40 (bank statements were not testimonial because "[w]hile duplicates of the statements may have been obtained in the course of investigating this case, the original statements were generated to facilitate the administration of the defendant's bank account"); *see also Melendez-Diaz*, 557 U.S. at 324 ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because — having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial — they are not testimonial."); *Crawford*, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial — for example, business records . . . .").[1]

_____

[1] Defendant also argues that the trial court erred by shifting the

7

¶ 14    *Melendez-Diaz*, relied on by defendant, is distinguishable.  The

records there — certificates of analysis showing that substances

seized by the police had been forensically determined to contain

cocaine — were testimonial because they had been *created* for the

sole purpose of providing evidence against the defendant.  557 U.S.

at 323-24.  Defendant argues that the records in this case were

likewise created "under circumstances which would lead an

objective witness reasonably to believe that the statement would be

available for use at a later trial."  *Id.* at 310 (quoting *Crawford*, 541

U.S. at 52).  He points to portions of the exhibit introduced at trial

that indicated the documents from Neustar were prepared in

response to the People's subpoena.  But, although the *exhibit*

introduced at trial was prepared in response to the subpoena, the

records themselves were created at or about the time of defendant's

phone activity, for Neustar's business purposes.  *Compare Yeley-*

*Davis*, 632 F.3d at 679, *and People v. Warrick*, 284 P.3d 139, 144

(Colo. App. 2011) (booking reports and mittimus admitted in trial

---

burden to the defense to establish that the phone records were
testimonial.  The trial court did not rule, however, that defendant
failed to establish that the records were testimonial; the trial court
ruled that the phone records were not testimonial.

for possession of weapon by a previous offender were not testimonial because they were created for routine administrative purposes and not to establish a material fact at any future criminal proceeding), *with Melendez-Diaz*, 557 U.S. at 322-24, *and Hinojos-Mendoza v. People*, 169 P.3d 662, 667 (Colo. 2007) (lab report that identified the substance found in Hinojos-Mendoza's vehicle to be cocaine was testimonial — it was prepared at the direction of the police, the sole purpose of the report was to analyze the substance in anticipation of criminal prosecution, and the report was introduced at trial to establish the elements of the charged offense).

¶ 15     Nor are we persuaded that the mere fact that the records were produced in a different format than they are kept in by the phone company transforms the records into testimonial statements. As the Tenth Circuit explained in *United States v. Keck*, "[i]n the context of electronically-stored data, the business record is the datum itself, not the format in which it is printed out for trial or other purposes." 643 F.3d 789, 797 (10th Cir. 2011). The fact that the record custodian distilled the pertinent business records into the exhibit ultimately offered at trial does not alter the characterization of the underlying nontestimonial phone data. *See*

*id.* at 796 (concluding that the admission into evidence of a spreadsheet logging wire transactions was constitutionally permissible even if the custodian of records cut and pasted information to create the exhibits; "since the underlying wire-transfer data are not testimonial, the records custodian's actions in preparing the exhibits do not constitute a Confrontation Clause violation"). This is not a case in which the business records were cherry-picked to support the prosecution's case. *Cf. People v. Flores-Lozano*, 2016 COA 149, ¶¶ 11-12 (spreadsheet there "was not a simple regurgitation of electronically stored information" because "the loss prevention director applied his professional judgment to sort, include, and exclude electronically stored information for the precise purpose of creating a customized spreadsheet to determine if the defendant had stolen from the victim and, if so, in what amount"). The exhibit here contained all of the phone records for the particular phone number, from three days before the robbery to five weeks after the robbery.

¶ 16 Defendant further contends, however, that even if the phone records themselves are not testimonial, the declaration by the custodian of records is testimonial. Defendant reasons that the

declaration was certainly made under "circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz,* 557 U.S. at 310 (quoting *Crawford,* 541 U.S. at 52), as the declaration states that it is in response to a subpoena.

¶ 17    We are again persuaded by the reasoning in *Yeley-Davis,* which followed several other circuits and concluded that a certification authenticating a business record is not testimonial simply by virtue of the certification itself being made in anticipation of litigation. 632 F.3d at 680. The court relied on *United States v. Ellis,* 460 F.3d 920, 927 (7th Cir. 2006), in which the Seventh Circuit explained that a written certification authenticating hospital records as kept in the ordinary course of the hospital's business was nontestimonial because it was "too far removed from the 'principal evil at which the Confrontation Clause was directed' to be considered testimonial." *Id.* (quoting *Crawford,* 541 U.S. at 50).

¶ 18    Here, as in *Yeley-Davis,* where the "purpose of the certifications . . . was merely to authenticate the cell phone records — and not to establish or prove some fact at trial," 632 F.3d at 680, we agree with the Tenth Circuit that the certification is not

11

testimonial. *See also United States v. Brinson*, 772 F.3d 1314, 1323 (10th Cir. 2014) (certificate authenticating debit card records which did not "contain any 'analysis' that would constitute out-of-court testimony" was simply a nontestimonial statement of authenticity); *United States v. Adefehinti*, 510 F.3d 319, 327-28 (D.C. Cir. 2007) (in trial related to scheme to secure mortgages at vastly inflated values, admission of loan applications and other documents relied on by banks in lending money pursuant to written certification of custodian of records did not violate the defendants' confrontation rights); *State v. Brooks*, 56 A.3d 1245, 1252-55 (N.H. 2012) (admission of various business records, including telephone records, authenticated by written certifications from the records' custodians did not violate the defendant's confrontation rights because the certificates themselves had minimal evidentiary value, serving only as the foundation for the admission of substantive evidence); *State v. Doss*, 754 N.W.2d 150, 161-65 (Wis. 2008) (affidavits authenticating bank records were not testimonial; noting that a number of federal appellate decisions addressed the issue and concluded that similar affidavits and certifications are

12

nontestimonial).  Because the certification is not testimonial, the Federal Confrontation Clause is not implicated.

### C.  Colorado Confrontation Clause

¶ 19     Defendant also argued in the trial court, and reasserts on appeal, that even if we conclude the phone records are nontestimonial, his right to confrontation under the Colorado Constitution was violated because the phone records were admitted without a showing that the custodian of records was unavailable. We disagree with defendant that his right to confrontation under the Colorado Constitution was violated.

¶ 20     The Colorado Confrontation Clause provides that a criminal defendant "shall have the right . . . to meet the witnesses against him face to face."  Colo. Const. art. II, § 16.  "The purpose of this provision is 'to prevent conviction by [e]x parte affidavits, to sift the conscience of the witness, and to test his recollection to see if his story is worthy of belief.'"  *Phillips*, ¶ 79 (alteration in original) (quoting *People v. Bastardo*, 191 Colo. 521, 524, 554 P.2d 297, 300 (1976)).

¶ 21     The People urge us to dispose of the analysis in *People v. Dement*, 661 P.2d 675 (Colo. 1983), *abrogated in part on other*

*grounds by People v. Fry*, 92 P.3d 970, 976 (Colo. 2004), and conform our analysis of state Confrontation Clause challenges to the approach that the United States Supreme Court has laid out for challenges under the Federal Confrontation Clause. In *Phillips*, a division of this court explored the proper analysis of Confrontation Clause challenges based on the state constitution. ¶ 81. The division noted that although our supreme court adopted the United States Supreme Court's inquiry under the Federal Confrontation Clause as to testimonial hearsay, it retained the test in *Dement* as to nontestimonial hearsay. *Id.* (citing *Compan v. People*, 121 P.3d 876, 885 (Colo. 2005)). The *Phillips* division then noted that our supreme court has not "directly considered whether, in light of our supreme court's congruent precedent, the recent clarification of *Crawford* should affect our state Confrontation Clause analysis." *Id.* at ¶ 82 (citation omitted). The division then followed *Compan* and considered a state Confrontation Clause issue involving nontestimonial hearsay under the *Dement* test. *See id.* We, too, apply *Dement* to evaluate whether admission of nontestimonial hearsay violates the Colorado Confrontation Clause.

14

¶ 22    In doing so, we disagree with defendant's assertion that

*Dement* necessarily requires a showing of unavailability to admit

evidence in the absence of the declarant.  Rather, in *Dement*, our

supreme court explained that the unavailability requirement is

subject to an exception when "the utility of trial confrontation [is

very] remote."  *Dement*, 661 P.2d at 681 (alteration in original)

(quoting *Ohio v. Roberts*, 448 U.S. 56, 65 n.7 (1980), *abrogated by*

*Crawford v. Washington*, 541 U.S. 36 (2004)).

¶ 23    Another division of this court applied the *Dement*

Confrontation Clause analysis and concluded that a price tag could

be used as prima facie evidence of an item's value in a theft trial

without implicating the defendant's confrontation right because the

utility of cross-examination would be very remote.  *People v.*

*Schmidt*, 928 P.2d 805, 807-08 (Colo. App. 1996).  The *Schmidt*

division explained that, because customers do not ordinarily

bargain over the price of retail goods, "if [the] defendant had asked

any employee in the store, including the manager, what the price of

a particular item was, he or she would have answered by checking

the price tag on the item."  *Id.* at 807.  The division acknowledged

that there might be instances in which a price tag would not reflect

15

the true value of an item, but the division nonetheless concluded that the defendant's right to confrontation was not violated. *Id.* at 808.

¶ 24     We conclude that cross-examining the custodian of the phone records would be of limited utility in this case and that a showing of unavailability was not required. Like a store employee reporting the value on a price tag, the custodian of records here reported information already recorded and stored in Neustar's records. *See also People v. Gilmore*, 97 P.3d 123, 131 (Colo. App. 2003) (Admission of a work order from a cable company, as well as a lay-away agreement for furniture and two related cash receipts, each containing the defendant's name and the address at which cocaine and the defendant were found, did not violate the defendant's confrontation right in a possession of controlled substance trial because "the documents do not assert that defendant had engaged in any conduct, criminal or otherwise, and there is no indication that self-interest or animus against defendant motivated the authors to make false statements about his address or that the documents may have been otherwise fraudulent," and thus "[t]he test of cross-examination regarding these documents would be of

marginal utility."). Thus, there is minimal practical benefit in applying "the crucible of cross-examination" against the custodian of records regarding the nontestimonial phone records. *Crawford*, 541 U.S. at 61. The mere possibility that a mistake may have been made in the records, just as a mistake may be made on a price tag, does not implicate defendant's confrontation right. *Schmidt*, 928 P.2d at 808.

### III. Closing Argument

¶ 25 Defendant next contends that during closing argument the prosecutor misstated the evidence regarding how DNA was or could have been deposited on the jeans.

### A. Legal Standards

¶ 26 "[A] prosecutor's closing argument should be based on the evidence in the record and all reasonable inferences to be drawn therefrom," and "'[t]he prosecutor should not intentionally misstate the evidence or mislead the jury as to the inferences it may draw.'" *Martinez v. People*, 244 P.3d 135, 140-41 (Colo. 2010) (quoting ABA Standards for Criminal Justice, Prosecution Function, and Defense Function § 3-5.8(a) (3d ed. 1993)).

¶ 27 "[C]losing argument allows advocates to point to different pieces of evidence and explain their significance within the case." *Domingo-Gomez v. People,* 125 P.3d 1043, 1048 (Colo. 2005). In so doing, "a prosecutor has wide latitude in the language and presentation style used." *Id.* We evaluate claims of improper argument "in the context of the argument as a whole and in light of the evidence before the jury." *People v. Samson,* 2012 COA 167, ¶ 30. Further, "because arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of the doubt when their remarks are ambiguous or simply inartful." *Id.*

¶ 28 "Whether a prosecutor's statements constitute misconduct is generally a matter left to the trial court's discretion." *Domingo-Gomez,* 125 P.3d at 1049. Thus, absent a showing of an abuse of discretion, we will not disturb the trial court's ruling allowing such statements. *People v. Strock,* 252 P.3d 1148, 1152 (Colo. App. 2010).

¶ 29 We turn to the context of the argument in light of the expert's testimony.

## B. Expert's Testimony

¶ 30　　A laboratory agent with the Colorado Bureau of Investigation forensic crime laboratory testified for the prosecution as an expert in criminalistics and the subfields of serology and DNA analysis and identification.  As pertinent here, the expert testified about the results of her analysis of the jeans for "contact or touch DNA."  Explaining "contact or touch DNA," the expert testified that "[w]hat that is is an indication maybe of who has been wearing a garment or who has been touching a garment."

¶ 31　　The expert testified that (1) a swab from the waist area of the jeans and (2) a swab from the inside of the front pocket of the jeans both resulted in a DNA profile that was mixture, with defendant being the source of the major component of the DNA profile.  When a DNA profile developed from a sample is a mixture, more than one individual's DNA profile is present.  In the mixture situation, there is sometimes a "main contributor" — an individual whose DNA is present in the sample at a much higher concentration than that of other potential contributors — and one or more minor contributors.

¶ 32　　The prosecutor explored the mixture concept as it related to touch DNA by posing a hypothetical.  He asked the expert whether it would be possible for him to pick up DNA from touching various

items around the room and then touching his collar, resulting in a DNA profile developed from the collar of his shirt then including both a major and minor component. The expert agreed this was possible because "DNA is pretty much everywhere," and she explained that when someone touches an item, he or she may deposit a small amount of DNA and remove some DNA of people who previously touched that same item. But, she said, "If you're talking about your mixture on your shirt, I would expect there -- I would expect there to be a major contributor, I would expect that major contributor to be you."

¶ 33    The expert made clear during her testimony that, although it might provide certain clues, DNA analysis could not conclusively establish how DNA arrived on a piece of clothing.

## C.  Closing Argument in This Case

¶ 34    Defendant asserts that the prosecutor, contrary to the expert's testimony, told the jury it was impossible that someone other than defendant had contact with the jeans. We disagree with this characterization of the prosecutor's argument.

¶ 35    The court instructed the jury on defendant's theory of defense in which he contended that "the presence of a mixture of DNA on

the . . . jeans indicates that someone other than [defendant] also came in contact with those areas of the jeans tested by the Colorado Bureau of Investigations." The prosecutor responded specifically to that theory of defense instruction in closing, arguing:

> [That i]nstruction goes on to say that they further contend the presence of a mixture of DNA on the . . . jeans indicates that someone other than Raymond Ortega also came in contact with those areas of the jeans tested by CBI.
>
> Simply not the case. It's essentially not the case at all. That says that what the mixture of DNA in the pockets and mixture of DNA on the waistband that what those jeans [shows] is that someone else came in contact with those jeans. They'd like you to believe that, but that's not what the evidence means, and that's not what the evidence shows.
>
> What the evidence shows is that the Defendant's DNA is on the waist of those jeans, and his DNA is in the pocket of those jeans. . . . Both the waist of the jeans and the pockets of the jeans have a mixture, what they call a mixture of DNA, that is to such a slight degree at that time cannot be interpreted to say [whose] DNA is this, [whose] is that.
>
> . . . The mixture that's in the pocket, and the mixture that's on the waist band means that *somebody else's DNA* came in contact with those jeans.
>
> But it absolutely does not mean *that somebody else* came in contact with the jeans. Sounds

21

like a small description, right?  But think about it like this: [the expert] talked about the fact if you're touching an item, you're picking up DNA from that item. . . .

The jeans that are there have touch DNA that was found as far as a mixture of DNA, that is absolutely consistent with picking up DNA from other items and putting it in your pockets.

. . . I can't stand here and tell you with certainty, I can't tell you where the DNA came from, the mixture.

What I can tell you is it's of a such a slight degree it's absolutely consistent with picking up DNA from any other items and putting them into the jeans for a long period of time.

What cannot be said is that the presence of the mixture indicates that someone other than Raymond Ortega also came into contact with those jeans.

(Emphasis added.)

¶ 36     Defense counsel objected on the basis that the prosecutor misstated the evidence, and the court overruled the objection, noting that this was argument.

¶ 37     The prosecutor then added, "They can't say it.  They can't say that the DNA came from somebody else, the postman came into contact with the jeans."

¶ 38     Thus, as we read the closing argument, the prosecutor responded to the theory of defense — that the DNA evidence indicated that someone else also came into contact with the jeans possibly worn in the robbery — by arguing, consistent with the expert's testimony, that the evidence simply indicated that someone else's *DNA* came into contact with the jeans.  The People's further argument that the result was "absolutely consistent with picking up DNA from any other items and putting them into the jeans" was reasonably based on the expert's testimony about touch DNA hypotheticals.

¶ 39     Although the prosecutor might have more artfully worded his argument, we read his statements as permissibly arguing that (1) the DNA evidence did not *establish* that someone other than defendant had contact with the jeans and (2) the more likely scenario was that defendant had picked up a small amount of someone else's DNA and deposited it on the jeans.  *See Sampson,* ¶ 30.  And importantly, the prosecutor reiterated in closing that he could not tell the jury with certainty, based on the DNA evidence, where the DNA on the jeans came from.

¶ 40     Accordingly, we discern no abuse of discretion in the trial

court's determination that the argument was permissible.

IV.  Cumulative Error

¶ 41     Because we discern no error in the trial court's rulings

admitting the cell phone records into evidence and determining the

prosecutor's argument was permissible, there was no cumulative

error.  *See People v. Marin*, 686 P.2d 1351, 1357 (Colo. App. 1983).

V.  Admission of Documentary Evidence in Habitual Trial

¶ 42     Finally, defendant contends that he was denied his right to

confrontation under the Colorado Confrontation Clause because the

trial court erroneously concluded that sentencing and prison

records could be admitted into evidence without a showing of

unavailability of "the judges or their clerks who may have created,

signed, or processed the various mitts and the other various court

documents."

¶ 43     In short, defendant again asserts that the Colorado

Confrontation Clause demands a showing that a declarant is

unavailable before nontestimonial hearsay can be admitted without

the declarant's testimony.  As we explained in Part II.C, under

*Dement,* the prosecution need not produce a declarant nor prove

him or her unavailable where the utility of trial confrontation is remote. As with the phone records, we conclude that the sentencing and prison records fall into this category. Indeed, defendant argues that unavailability must be shown but offers no argument as to what helpful information might be revealed by cross-examination of the judges or clerks who recorded and reported defendant's previous convictions.

## VI. Conclusion

¶ 44     The judgment is affirmed.

JUDGE LICHTENSTEIN and JUDGE STERNBERG concur.