COLORADO COURT OF APPEALS                                    2016COA149

Court of Appeals No. 13CA1733
Arapahoe County District Court No. 12CR1241
Honorable Elizabeth Beebe Volz, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Maria Guadalupe Flores-Lozano,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE BERGER
Román, J., concurs
Bernard, J., specially concurs

Announced October 20, 2016

Cynthia H. Coffman, Attorney General, Ellen M. Neel, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Lynn Noesner, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     The principal question presented in this case is whether a computer spreadsheet, prepared by an in-house loss prevention director of the defendant's employer, and designed to determine if the defendant, Maria Guadalupe Flores-Lozano, committed theft and in what amount, qualified for admission into evidence under the business records exception to the hearsay rule.  We hold that the trial court did not abuse its discretion in admitting the spreadsheet and affirm Flores-Lozano's conviction of theft of more than $1000 but less than $20,000.

## I.     Background

¶ 2     Flores-Lozano was a shift manager at a fast food restaurant. The restaurant had a point-of-sale (POS) system that stored information associated with every sale, a business analytics system that analyzed trends within the POS system, and a video recording system.

¶ 3     One of the restaurant chain's loss prevention directors, using the business analytics and video systems, noticed that Flores-Lozano had been giving an atypical number of discounts to customers.  He thought that some of the discounts were legitimate. But he also noticed a suspicious pattern: Flores-Lozano had

1

discounted the gross amounts of sales down to a few cents many times.

¶ 4    It appeared to the loss prevention director that, for those transactions where Flores-Lozano was discounting almost the entire amount of the sale, she was pocketing the difference between the amount of the cash taken from the customer and the after-discount amount of the sale reflected by the POS system.

¶ 5    Mining the data in the POS system, the loss prevention director looked at every discount Flores-Lozano had given over a seven-and-a-half-month period.  He copied the transactions from the POS system in which he suspected Flores-Lozano had improperly discounted the sale and pasted them into a separate spreadsheet that he created.  The spreadsheet reflected approximately 4400 transactions in which Flores-Lozano had discounted almost the entire amount of the sale.  The director calculated the total aggregate amount of these discounts, and thus of the suspected thefts, to be $23,320.01.

¶ 6    The loss prevention director confronted Flores-Lozano, and showed her the spreadsheet.  She admitted that she had been stealing from the company.  He then showed her photographs,

which he had culled from the video system, and the related receipts from fifty-four particular instances in which Flores-Lozano had discounted sales to a few cents. She admitted that she had stolen from the restaurant in each of these incidents. After completion of his internal investigation, he reported the results to his superiors, and they directed him to refer the matter to the police.

¶ 7    The People charged Flores-Lozano with theft of more than $20,000. The sole contested issue at trial was the amount of the theft. Flores-Lozano argued to the jury that it should only convict her of theft for the specific instances in which she had admitted her guilt. These instances of theft amounted to less than $500.

¶ 8    The jury rejected both the People's and Flores-Lozano's positions regarding the amount of the thefts and instead found Flores-Lozano guilty of the lesser included offense of theft of $1000 or more but less than $20,000.

## II.    The Spreadsheet Was Admissible Under The Business Records Exception To The Hearsay Rule

¶ 9    The first question is whether the spreadsheet contained hearsay. We conclude that it did, but that it was admissible under the business records exception to the hearsay rule. CRE 803(6).

¶ 10    "'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). "Hearsay is not admissible except as provided by [the rules of evidence] or by the civil and criminal procedural rules applicable to the courts of Colorado or by any statutes of the State of Colorado." CRE 802.

¶ 11    The spreadsheet was not a simple regurgitation of electronically stored information created by the victim's computer systems which, under at least some circumstances, might not constitute hearsay. In *People v. Buckner*, 228 P.3d 245, 250 (Colo. App. 2009), a division of this court observed that information automatically generated by a machine is not hearsay because it is not a "statement" made by a "declarant" within the meaning of CRE 801. But here the information was not automatically generated.

¶ 12    The record shows that the loss prevention director applied his professional judgment to sort, include, and exclude electronically stored information for the precise purpose of creating a customized spreadsheet to determine if the defendant had stolen from the victim and, if so, in what amount. The resulting work product, an out-of-court statement offered for the truth of the matter asserted

(that the defendant stole and in what amount), is hearsay and it was inadmissible unless an exception to the hearsay rule applied.

¶ 13     The relevant hearsay exception was the business records exception codified in CRE 803(6). This rule authorizes a court to admit into evidence "records of regularly conducted activity" when supported by an adequate foundation showing: (1) the document was made at or near the time of the matters recorded in it; (2) the document was prepared by, or from information transmitted by, a person with knowledge of the matters recorded; (3) the person who recorded the document did so as part of a regularly conducted business activity; (4) it was the regular practice of that business activity to make such documents; and (5) the document was retained and kept in the course of a regularly conducted business activity. *See Schmutz v. Bolles*, 800 P.2d 1307, 1312 (Colo. 1990).

¶ 14     Each of these requirements was satisfied.

¶ 15     First, the loss prevention director testified that the POS records were automatically generated when each sale (and each discount) was made. While the spreadsheet was made later, the data from which it was compiled was generated when the

transactions occurred. *United States v. Keck*, 643 F.3d 789, 797 (10th Cir. 2011); *see also People v. Ortega*, 2016 COA 148, ¶ 15.

¶ 16    Second, the loss prevention director, a person with indisputable knowledge of the matters recorded, prepared the spreadsheet.

¶ 17    The third, fourth, and fifth requirements of the business records exception were also met by the loss prevention director's testimony that he regularly conducted investigations of theft within the restaurant chain and that he regularly prepared and kept spreadsheets in the course of these investigations.

¶ 18    Although the loss prevention director also testified during voir dire examination by defense counsel that he prepared the spreadsheet for purposes of litigation, his other testimony and the circumstances demonstrate that was not the case and the trial court was not bound to accept any specific part of his testimony. As the finder of fact on preliminary issues regarding the admissibility of evidence, *see* CRE 104, the district court was entitled to credit or discredit any part of the director's testimony. *In re Marriage of Bregar*, 952 P.2d 783, 786 (Colo. App. 1997).

¶ 19 The responsibilities of the loss prevention director included the ferreting out of theft by employees. Unless and until he detected theft, there was nothing to litigate. Moreover, he was not a law enforcement officer and had no authority to prosecute any crimes, including the crime of theft.

¶ 20 Thus, contrary to the loss prevention director's testimony during voir dire, the trial court was entitled to conclude that the spreadsheet was not a document prepared for litigation. If the spreadsheet had been prepared exclusively for litigation, it likely would have been inadmissible. Longstanding authority holds that a record prepared for the purposes of litigation does not carry with it the guarantees of reliability that form the underlying basis for the business records exception. *See People v. Stribel*, 199 Colo. 377, 380, 609 P.2d 113, 115 (1980).

¶ 21 Our conclusion that the spreadsheet satisfied each of the requirements of the business records exception necessarily leads us

to conclude that the trial court did not abuse its discretion in admitting it into evidence.[1]

¶ 22    As the special concurrence elegantly explains, the ubiquitous storage and computerized manipulation of electronically stored information raises a number of interesting and vexing issues regarding the very meaning of hearsay and the applicability of the business records exception to such information or documents. This case, however, does not require us to address or decide any of those issues because, applying the traditional (and rule-mandated) definition of hearsay and the established reach of the business records exception, the spreadsheet was properly admitted into evidence.

¶ 23    We leave it to another day, another case, and perhaps a more suitable forum, such as the Colorado Supreme Court Committee on the Rules of Evidence and the Colorado Supreme Court in its

---

[1] Flores-Lozano also contended that the loss prevention director used a "faulty data extrapolation process" to prepare the spreadsheet. But she never suggested that the spreadsheet did not accurately reflect the data from the sales monitoring system. Thus, her contention relates to the weight that the jury should have given the spreadsheet and its contents and not the spreadsheet's admissibility. *See, e.g., Wallace v. Target Stores, Inc.*, 701 P.2d 1272, 1273 (Colo. App. 1985).

rulemaking capacity, to address the questions raised in the special concurrence.

III.   Conclusion

¶ 24    The judgment of conviction is affirmed.

JUDGE ROMÁN concurs.

JUDGE BERNARD specially concurs.

JUDGE BERNARD, specially concurring.

> The fact that a computer system may not contain an actual document in the precise hard copy form by which that data are presented in court does not render the hard copy evidence inadmissible hearsay. In an increasingly technological world, courts would well nigh eviscerate the [business records] exception if they adopted a contrary policy.

*Dutch v. United States*, 997 A.2d 685, 690 (D.C. 2010).

¶ 25    If a company maintains a database of business data in the ordinary course of business, and the company's representative creates a document for litigation that consists entirely of data from the database, then is the document a business record that is admissible under CRE 803(6)? I would answer that question "yes."

¶ 26    I concur with the majority's conclusion that the spreadsheet was a business record that was admissible at defendant's trial under CRE 803(6). But I respectfully write separately because I would rely on a different rationale.

¶ 27    It is my view that the spreadsheet that the loss prevention director prepared in this case was admissible because *all* of the data in it had been generated in the regular course of business. The data was generated and collected by a point-of-sale computer

10

system that stored information associated with every sale of food that occurred in the company's 192 restaurants. This sales monitoring system collected data from each register when each sale was made.

¶ 28    The sales monitoring system tracked the entries made by individual employees because the employees would log into the cash register using their employee identification number. Indeed, the system kept the register data for every employee in the company. Among other things, the system could be used to investigate employee theft. According to the loss prevention director, the system "force-rank[ed] each employee by the highest number of no sales, voids, coupons, open-dollar discounts and kind of gives you a preliminary idea of who you might want to look into."

¶ 29    The company only allowed managers, such as defendant, to give customers discounts. And they did so by entering their employee identification number and then doing one of two things: by swiping a computer card through a slot on the register that identified the user as a manager or by manually entering a specified code on the register's keypad.

¶ 30    The system collected the data at the time that the sale occurred.  The system allowed the loss prevention director to "go in and search, query."  He could "query . . . to find out all the cash transactions we had . . . and discounts."  He could look "at each transaction."  In this case, the director obtained a copy of every transaction that occurred in the restaurant where defendant worked for the pertinent period.  He then looked for transactions in which cash purchases had been discounted to a few cents.  He found 4400 of them.

¶ 31    The director then developed the spreadsheet that the trial court admitted in this case by cutting and pasting data from the sales monitoring system concerning those 4400 discounted sales.  The director's trial testimony made clear that the spreadsheet only contained data that had been generated by the sales monitoring system.  He did not add anything to it.  Under these circumstances, I would conclude, for the following reasons, that the trial court did not abuse its discretion when it admitted the spreadsheet because the spreadsheet was a business record under CRE 803(6).

¶ 32    First, tracking the language of CRE 803(6), the director's testimony established that

12

- the information from the sales monitoring system in the spreadsheet was a "data compilation . . . of acts [or] events," CRE 803(6), because it contained information that the system had collected about sales transactions, *see* Fed. R. Evid. 803(6) advisory committee note (the term "data compilation" "includes, but is by no means limited to, electronic computer storage");

- the sales monitoring system automatically collected the data about the acts or events — the sales transactions — "at or near the time" that they occurred, CRE 803(6);

- the company kept the data in the sales monitoring system "in the course of a regularly conducted business activity," *id.*, which was figuring out its taxes;

- it was the company's "regular practice of [a] business activity," *id.*, to compile the data from the sales monitoring system; and

- all this information was provided by the director, who was a "custodian or other qualified witness," *id.*

¶ 33    Second, the record shows that the spreadsheet was admissible as a business record under Colorado case law, *see Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 201 (Colo. 1984), because (1) the

13

data in the spreadsheet was made by the company's employees in the regular course of business; (2) the employees who used the cash registers, thereby entering information into the sales monitoring system, were acting in their regular business routine; (3) the sales monitoring system accurately recorded the data from the sales; (4) the data entries were made contemporaneously with the employees' use of the cash registers; and (5) the information was entered by employees who had knowledge of the sales. *See id.*

¶ 34 Third, the holdings of decisions from other jurisdictions and the observations of commentators indicate that spreadsheets, such as the one in this case, are admissible as business records under CRE 803(6). (I note that most of these cases involve Fed. R. Evid. 803(6), which is similar to CRE 803(6). Although the federal rule was rewritten in 2011 to remove any reference to "data compilation" and to substitute the term "record," "there can be no doubt that the new simpler language reaches at least as far as the original language." 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:79, at 734 (4th ed. 2013). Federal cases interpreting similar federal rules therefore provide "helpful and highly

persuasive guidance" when interpreting CRE 803(6). *Leaffer v. Zarlengo*, 44 P.3d 1072, 1080 (Colo. 2002).)

- "In the context of electronically-stored data, the business record is the datum itself, not the format in which it is printed out for trial or other purposes." *United States v. Keck*, 643 F.3d 789, 797 (10th Cir. 2011).

- "[E]vidence that has been compiled from a computer database is . . . admissible as a business record, provided it meets the criteria of Rule 803(6)." *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009).

- "A business record may include data stored electronically on computers and later printed out for presentation in court, so long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice." *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994).

- As long "as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice, the fact that the hard copy

offered as evidence was printed for purposes of litigation does not affect its admissibility." *United States v. Hernandez*, 913 F.2d 1506, 1512-13 (10th Cir. 1990).

- "[E]xhibits showing selected data pulled from records that a company keeps in the ordinary course of business fall under the business records exception, even if the physical exhibits themselves were made to comply with a request from law enforcement." *United States v. Burgos-Montes*, 786 F.3d 92, 119 (1st Cir. 2015).

- A printout of account information was admissible as a business record under Fed. R. Evid. 803(6) when the data was stored in a database and a manager ran a query to create a spreadsheet for trial. *United States v. Nixon*, 694 F.3d 623, 633-35 (6th Cir. 2012). The spreadsheet was "just a presentation in structured and comprehensible form of a mass of individual items." *Id.* at 635 (quoting *United States v. Russo*, 480 F.2d 1228, 1240 (6th Cir. 1973)).

- "[C]omputer data compiled and presented in computer printouts prepared specifically for trial is admissible

under Rule 803(6), even though the *printouts* themselves are not kept in the ordinary course of business." *United States v. Fujii*, 301 F.3d 535, 539 (7th Cir. 2002).

- A printed Excel spreadsheet containing a "compilation of call data produced by human query for use at trial falls under the business record exception where the underlying data is automatically recorded and stored by a reliable computer program in the regular course of business." *People v. Zavala*, 156 Cal. Rptr. 3d 841, 846 (Cal. Ct. App. 2013).

- "[P]rintouts prepared specifically for litigation from databases that were compiled in the ordinary course of business are admissible as business records to the same extent as if the printouts were, themselves, prepared in the ordinary course of business.  The important issue is whether the database, not the printout from the database, was compiled in the ordinary course of business."  5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 901.08[1A], at 901-84 (Joseph M. McLaughlin ed., 2d ed. 2015).

17

- "[W]hen information is recorded in the computer in the sequence in which it was received rather than organized by customers or transactions, reordering the data by computer should not present a barrier to its admission greater than a manual collation of related business records would." George E. Dix et al., McCormick on Evidence § 294, at 459 (Kenneth S. Broun & Robert P. Mosteller eds., 7th ed. 2013).

¶ 35 Fourth, based on the previous three reasons, this case is not like *Palmer v. Hoffman*, 318 U.S. 109, 114 (1943). In that case, a railroad's accident reports were inadmissible because they were "not for the systematic conduct of the enterprise as a railroad business," but, instead, they were "calculated for use essentially in the court." *Id.*; *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 321-22 (2009). But, in this case, the spreadsheet contained data that was generated and maintained in the regular course of business. *See, e.g., Burgos-Montes*, 786 F.3d at 119; *Nixon*, 694 F.3d at 633-35; *Fujii*, 301 F.3d at 539; *Potamkin Cadillac Corp.*, 38 F.3d at 632; *Zavala*, 156 Cal. Rptr. 3d at 846; *Dutch*, 997 A.2d at 690.