24CA1908 Marriage of Strickland 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1908
La Plata County District Court No. 17DR30040
Honorable Kim S. Shropshire, Judge

---

In re the Marriage of

Bryson Tylor Strickland,

Appellee,

and

Lacy Joe Strickland,

Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE BERNARD*
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellee

The Law Firm of Lisa Ward, LLC, Lisa Ward, Durango, Colorado, for Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1      Bryson Tylor Strickland, who we shall call "father," filed a motion to restrict the parenting time of Lacy Joe Strickland, whom we shall call "mother." In granting the motion, the trial court ordered that the children of mother and father would change their primary residence from mother's home to father's home. Mother appeals. We affirm.

## I.     Background

¶ 2      Since their divorce in 2018, mother and father have shared custody of their two children. Under their separation agreement, the children lived primarily with mother in Colorado, where they attended school. Father, who lived in Texas, had monthly parenting time plus more time with the children during the summer and holidays.

¶ 3      In July 2024, father filed an emergency motion to restrict mother's parenting time. He alleged there was domestic violence in mother's home endangering the children. After a hearing, the trial court found, in an August 2024 order, that mother had been the victim of domestic violence involving her fiance; that it was concerning mother was unable to acknowledge she had been the victim of violence; and that video evidence presented during the

hearing disturbingly showed the intensity of the violence and the children's reactions to witnessing it.

¶ 4     These findings led the court to decide the children were at risk of emotional, physical, and psychological harm in mother's residence and that their well-being was endangered when mother had unrestricted parenting time with them. The court entered a written order restricting mother's parenting time, ordering that the children were to remain in Texas with father, and requiring the children to begin school there.

¶ 5     Mother filed a C.R.C.P. 59 motion and a motion to remove the restrictions the court had imposed when granting father's emergency motion. The court denied both motions.

## II.     The Court's Findings

¶ 6     Mother contends the court did not consider the children's best interests, the harm a change of residence might cause them, or the least detrimental alternative between allowing the children to remain in mother's home while prohibiting the fiance from having any contact with them and transferring their primary residence to father's home. We disagree.

## A. Applicable Legal Standards

¶ 7     A court "may make or modify an order granting or denying parenting time rights whenever such order or modification would serve the best interests of the child." § 14-10-129(1)(a)(I), C.R.S. 2025. The best interest of the child "is the controlling factor for a trial court when entering any order relating to parenting time." *In re Marriage of Barker*, 251 P.3d 591, 592 (Colo. App. 2010). A court has "broad discretion when modifying an existing parenting time order, taking into consideration the child's best interests." *Id.* While "some detriment to a child is present in every child placement decision, a court's task is to make the placement choice 'least detrimental' to the child." *In re Marriage of Martin*, 42 P.3d 75, 78 (Colo. App. 2002)(citation omitted). This analysis is "subsumed within the concept of best interests of the child" standard. *Id.*

¶ 8     We review an order modifying parenting time for an abuse of discretion. *Id.* A court abuses its discretion if "its decision is manifestly arbitrary, unreasonable, or unfair; is based on an erroneous understanding or application of the law; or misconstrues or misapplies the law." *In re Marriage of Badawiyeh*, 2023 COA 4, ¶ 9.

## B.    Additional Facts

¶ 9    During the hearing on father's motion, the court heard testimony from witnesses relating to the alleged domestic violence that mother's fiance had inflicted on her.  The fiance's daughter, a minor child, testified she took videos of mother and the fiance fighting and of mother's children fighting.  She also said the fiance had forced her to drink alcoholic beverages.  After this testimony, the court watched the videos.  (We note that the video of mother and the fiance fighting is very dark, and one cannot clearly see what anyone is doing.  But one can hear screams and yelling.)

¶ 10    The daughter's mother testified she checked her daughter's phone after the daughter had returned from parenting time with the fiance, discovering disturbing and demeaning messages the fiance had sent to the daughter.  She added that her daughter was not doing well emotionally since returning from seeing the fiance and that her daughter would frequently call her distraught from being with him.

¶ 11    A caseworker with the La Plata Department of Human Services testified about her investigation and eventual determination that the presence of the alleged domestic violence in mother's home was

a safety concern for the children. The caseworker added she knew of twenty reports over a four-year period relating to alleged domestic violence in mother's home. Mother objected to these reports being admitted into evidence at the hearing, stating they were inadmissible because they contained hearsay and because they were irrelevant. The court admitted the reports into evidence.

¶ 12 Mother testified. She characterized the incident depicted in the video recorded by the fiance's daughter as a "communication issue." She said a 2022 investigation into an incident in which the fiance allegedly assaulted her was a "misunderstanding," and she claimed he had not assaulted her.

¶ 13 Father testified. He was concerned "something irreversible" would happen to the children during mother's parenting time. He said the children were more withdrawn after they returned from parenting time at mother's home when the incident shown in the video took place.

¶ 14 In its written order restricting mother's parenting time, the court stated that section 14-10-129(1)(a)(I) allows courts to modify parenting time rights whenever such a modification would "serve the best interests of the child." It then found "the children's

emotional, physical, and psychological wellbeing is endangered due to unrestricted parenting time with [m]other," and "[m]other's denial of the presence of domestic violence in the home, as well as the children's repeated exposure to the domestic violence, puts the children at risk of emotional, physical, and psychological harm." It also found mother "failed to protect the children from this harm," and she posed an "emotional and psychological safety risk to the children." Finally, it found there was "credible testimony [mother's] prior partner had both engaged in domestic violence and excessive discipline of the children."

¶ 15    In an oral ruling from the bench, the court found, due to the children being endangered in mother's home, it would restrict her parenting time until the threatening conditions no longer existed or until the court adopted a different parenting time plan that was in the children's best interests.

## C.    Analysis

¶ 16    We conclude, for the following reasons, that the court, when entering its order, considered the children's best interests, the harm that a change of residence might cause them, and the least detrimental alternative between allowing the children to remain in

mother's home while prohibiting her fiance from having any contact with them and transferring their primary residence to father's home. We further conclude that the court did not abuse its discretion when entering its order because its decision (1) was not arbitrary, unreasonable, or unfair; (2) was not based on an erroneous understanding or application of the law; and (3) did not misconstrue or misapply the law. *See Marriage of Badawiyeh*, ¶ 9.

¶ 17    First, in its written order, the court stated the best-interests-of-the-child standard governed its analysis of whether a restriction of mother's parenting time was appropriate and proper.

¶ 18    Second, the court's oral and written orders prioritized the children's best interests.

¶ 19    Third, the court found that, "when [it] consider[ed] what [was] in the children's best interest after it ma[de] the endangerment analysis, it could not "put these children back in [mother's] home" and that it "ha[d] limited options available to it and [it thought the restriction was] what's in the best interest of the children."

¶ 20    Fourth, contrary to mother's assertion, the court considered mother's proposed least detrimental alternative of prohibiting contact between mother's fiance and the children. The record

shows the court considered this alternative insufficient to protect the children because the court was concerned mother had demonstrated a "willingness to lie to protect her relationship with [the fiance]" to the point that the court could not take her word "at face value."

¶ 21     Fifth, the "least detrimental alternative" analysis is "subsumed within the concept" of the analysis of what arrangement is in the best interests of the child. *See Martin*, 42 P.3d at 78. So, even if the court had not expressly addressed the inadequacy of mother's proposed least detrimental alternative, it implicitly addressed that alternative by deciding that the best interests of the children required a transfer of their primary residence to father.

¶ 22     Sixth, the court considered the potential harm of changing the children's primary residence. The court said, "I absolutely understand how disruptive this is moving the children from one state to the next. The court's hands are a little tied because of the geographic distance."

## III. Endangerment Finding

¶ 23    Mother asserts the court erred by restricting her parenting time and changing the children's primary residence without finding that she had endangered them. We disagree.

### A. Applicable Legal Standards

¶ 24    A court "shall not restrict a parent's parenting time rights unless it finds that the parenting time would endanger the child's physical health or significantly impair the child's emotional development." § 14-10-129(1)(b)(I). In addition to such a finding, a court "shall enumerate the specific factual findings supporting the restriction." *Id.* Finally, a court must determine that the restriction would serve the best interests of the child. *See* § 14-10-129(2.5)(a).

### B. Analysis

¶ 25    Contrary to mother's assertion, the court found that living with mother endangered the children. In its written order, the court found that mother had not protected the children from the harm resulting from witnessing the fiance subject mother to domestic violence; that mother posed an "emotional and psychological safety risk to the children"; and that, in part due to her denying that the domestic violence had occurred, it was "difficult to ascertain when,

9

or if, the children would be safe in her care." In its oral ruling, the court also specified that it found "that there was sufficient evidence to remove the children due to emotional, mental, and physical endangerment to them in [mother and the fiance's] home."

¶ 26 The court also laid out the specific factual underpinnings of its order, including the video, the testimony about the children's emotional well-being, and its "great concern regarding the impact [of the presence of domestic violence] on the children's development."

¶ 27 In her C.R.C.P. 59 motion, mother asked for relief because her fiance's daughter supposedly admitted her testimony had been false. But, in its ruling on the motion, the court stated that this putative admission would not have made a difference in its ruling. Based on the other evidence upon which the court relied, we see no reason to question this ruling.

¶ 28 Mother last asserts the court's finding of endangerment was undermined by its willingness to allow the children to stay with mother during her parenting time without supervision as long as her fiance remained out of the house. But the court's order was also based on concerns about the harm mother's conduct had

caused the children and about mother's credibility. As we noted above, the court found (1) *unrestricted* parenting time with mother endangered the children's "emotional, physical, and psychological wellbeing"; (2) mother's *denial* of domestic violence in the home along with the children's *repeated exposure* to it "put[] the children at risk of emotional, physical, and psychological harm"; (3) mother *failed* to protect the children from this risk, so *she* also posed a safety risk to the children; (4) it was *hard* for the court "to ascertain when, or if, the children would be safe in [mother's] care"; and (5) mother was *willing* "to lie to protect her relationship with [the fiance]," so the court could not take her word "at face value."

¶ 29     Relatedly, it is important to keep in mind what the court's order was and what it was not.

¶ 30     The order addressed an emergency motion, and it imposed a temporary remedy. The order did not address a motion to modify parenting time on a more long-term basis, which would ask the court to adjudicate whether the children should relocate to Texas to live with father. The court anticipated father would file such a motion, which he did September 2024. That motion is pending.

11

## IV. Evidentiary Claims

¶ 31    Mother submits the court erred because it admitted hearsay and irrelevant evidence and because it relied on evidence outside the record.  We disagree.

### A. Applicable Legal Standards

¶ 32    Evidence is relevant, and presumptively admissible, if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  CRE 401; *accord Rojas v. People*, 2022 CO 8, ¶ 3.

¶ 33    Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  CRE 801(c).  Hearsay statements are generally inadmissible except as provided in CRE 803.  *People v. Vanderpauye*, 2023 CO 42, ¶ 25.  One such exception, the business records exception, renders hearsay evidence admissible when the evidence was "kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make [the record]."  CRE 803(6).

¶ 34     To satisfy the business records exception, the proponent of the evidence must establish five things.  First, the document must have been made at or near the time of the matters recorded in it.  *People v. Flores-Lozano,* 2016 COA 149, ¶ 13.  Second, the record must have been prepared by, or from information transmitted by, a person with knowledge of the matters recorded.  *Id.*  Third, the person who recorded the document must have done so as part of a regularly conducted business activity.  *Id.*  Fourth, it must have been the regular practice of that business activity to make such documents.  *Id.*  Finally, the document must have been created and kept during a regularly conducted business activity.  *Id.*

¶ 35     We review a court's evidentiary rulings for an abuse of discretion.  *People v. Russell,* 2014 COA 21M, ¶ 22, *aff'd,* 2017 CO 3.  We have described what amounts to an abuse of discretion previously in this opinion.  *See Marriage of Badawiyeh,* ¶ 9.

¶ 36     A trial court's decision about "whether a statement constitutes hearsay is a legal conclusion, which we review de novo."  *People v. Hamilton,* 2019 COA 101, ¶ 12.

## B.    Analysis

¶ 37    We conclude, for the following reasons, that the court did not improperly admit hearsay or irrelevant evidence and that it did not improperly rely on evidence outside of the record.  As a result, the court did not abuse its discretion when it made the evidentiary rulings mother contests.  *See Marriage of Badawiyeh,* ¶ 9.

¶ 38    Mother submits that the court improperly admitted the reports from the La Plata Department of Human Services because they were irrelevant and inadmissible hearsay.  We disagree.

¶ 39    The reports were highly relevant to a material issue: whether the historical presence of domestic violence in mother's home endangered the children.  *See* CRE 401; *Rojas,* ¶ 3.  Mother contends that some of the reports concerned people who are no longer present in her life.  But the reports were still relevant for the court to understand the historical pattern of domestic violence in mother's relationships and its effect on the children.  The reports helped the court to decide whether mother's parenting time endangered the children and what would be in their best interests.  As such, the reports were relevant and presumptively admissible.

¶ 40 Next, the reports were not inadmissible hearsay. The court properly concluded that they were admissible under the business records exception to the hearsay rule. It found that the reports were generated in the regular course of the Department of Human Service's business and that the caseworker's testimony satisfied the other four elements of the business records exception. And mother does not develop any other hearsay arguments in her opening brief.

¶ 41 Last, the court did not improperly rely on information that had not been introduced into evidence. Rather, it relied on its experience to make an individualized determination that the children's physical, emotional, and psychological health was endangered by unrestricted parenting time with mother. Although mother contends the court's recitation of harm to children from witnessing domestic violence was not based on the evidence in the record, the record contains evidence that the children were harmed while living with mother. For example, father testified the children were more withdrawn after the domestic violence incident depicted on the video. For another example, our review of the video indicates the children were exposed to a traumatizing event.

V.    Father's Request for Appellate Attorney Fees and Costs

¶ 42    Father asks us to award him appellate attorney fees under section 13-17-102, C.R.S. 2025; C.A.R. 38(b); and C.A.R. 39.1 because, he submits, mother's appeal lacked substantial justification and was frivolous.  We deny this request.  *See Mission Denv. Co. v. Pierson*, 674 P.2d 363, 365 (Colo. 1984)("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights."); *Glover v. Serratoga Falls LLC*, 2021 CO 77, ¶ 70 (noting that attorney fees awards for frivolous appeals should be reserved for "clear and unequivocal" cases involving "egregious conduct" (citation omitted)).  While we are affirming the trial court's order, it was not "so plainly correct and the legal authority so clearly against [mother's] position that there [was] really no appealable issue."  *Martin v. Essrig*, 277 P.3d 857, 862 (Colo. App. 2011).

¶ 43    But, because we affirm the order, father is entitled to his appellate costs under C.A.R. 39(a)(2), which states, "[I]f a judgment is affirmed, costs are taxed against the appellant."  Father may

pursue those costs in the trial court by following the procedure described in C.A.R. 39(c)(2).

¶ 44 The trial court's order is affirmed.

JUDGE PAWAR and JUDGE GOMEZ concur.